LEWIS N. SPRAGUE AND WM. H. CARR, ADMINISTRATORS OF RICH-ARD BOND, v. STILLMAN CLARK.

### Replevin.

Under the statute (Gen. Sts., p. 320, sec. 13), the right to the possession as against the defendant only, is all that is necessary to maintain replevin.

A person in possession of property claiming it, or an interest in it, or a legal right to the possession, may maintain replevin against any person taking the property from him, who can not show a better right to it. The defendant can prevail only when it appears that he is entitled to a return of the property, and that can be only when it appears that his right is superior to that of the plaintiff.

This action can be maintained as an adversary proceeding, only by force of the statute.

The facts stated by the plaintiffs' witnesses in this cause, *held* sufficient to make out a *prima facie* case.

REPLEVIN for one pair three years old steers, one pair brown oxen, one pair yellow oxen, one pair red stags, one pair red oxen, one pair red and white bulls, one red and white cow, two red cows, one bay mare, one gray three years old colt, and one bay three years old colt. Plea, the general issue. Trial by jury, April term, 1867, BARRETT, J., presiding. The plaintiffs were duly appointed administrators August 8, 1865. Bond died August 5, 1865.

The plaintiffs testified that none of said property, except the bulls, was in the possession of Bond when he died ; that they

found among Bond's papers a small book, labeled "My claims against other men;" that, guided by this book, they found the stock above mentioned, except the bulls, in the possession of different men, the witnesses specifying particularly the different parties in whose hands it was found ; that they, as administrators of Bond's estate, took possession of said stock, the parties in possession conceding it belonged to Bond; that said property was inventoried as part of Bond's estate ; that Clark afterward took the same from Bond's premises, and refused to give it up, whereupon the plaintiffs replevied it.

The witness, William H. Carr, then testified upon cross-examination, as follows, viz.:

"Knew Bond and Clark a good while. Did n't know that they had been buying and selling cattle together. Think about two weeks after Bond's death I knew Clark claimed some of these cattle. I heard the defendant was on the other side of the mountain buying cattle when Bond died. He went to Massachusetts and took cattle, and some that I claimed as administrator. I claimed the money he got for them. He did n't claim that he owned and had a right to take them. I asked him how many he drove off that belonged to Bond, and he told me. Can't say how long after, but not a great while, he claimed he had a right to dispose of them. He got back from below about the 16th of August. I knew he claimed to have an interest in the replevied cattle before he took them. This was the first time I saw him after he got back. I'd made arrangements for driving in these cattle before I knew of his claim, but they were not actually driven in. Did n't make inquiry as to where cattle came from. After I got them into the pasture, I knew Clark claimed to have an interest in them. Wheeler told me they would be in my reach Monday morning. Found them as he told me."

*Re-examined:* "I understood from the defendant that he took twelve three years old steers as he came along with the drove. He said they belonged to Bond. Did n't tell how many of those he brought from over the mountain, belonged to Bond. When the defendant told me he claimed an interest in the cattle, I asked him what cattle. He said he could n't tell. That was the day he returned from Massachusetts. Before this suit was brought, he claimed that it was his business and right to take the cattle and dispose of them. Sometime after this suit was brought, the defendant claimed one half of the profits on the cattle replevied. Sprague asked him if he should have considered that he had a

right to take away any of these cattle if Bond had been alive. He said he should not."

*Re-cross-examined:* "This conversation was at foot of Butler & Wheeler's stairs, in September or October. Nobody but Sprague, self and Clark present. Knew before that, that the defendant claimed he and Bond were in company. Learned it from him. Think Wheeler had told me he claimed the cattle as surviving partner. Did n't understand in conversation at foot of stairs that the defendant was abandoning any claim he had, or had before made."

Upon this evidence the plaintiffs rested their case. The court, upon suggestion of the defendant's counsel, ruled that the plaintiffs had shown no such right to the property described in their writ as would enable them to maintain their action, and thereupon directed the jury to return a verdict for the defendant to recover one cent damages, etc., and his costs, to which the plaintiffs excepted.

It did not appear, other than as it appears from the above testimony, upon what ground the defendant claimed said property.

*Chas. N. Davenport,* for the plaintiffs.

Under our statute as at present existing, replevin will lie wherever trespass or trover will lie. *Briggs* v. *Gleason,* 29 Vt., 78; *Estey* v. *Love et al.,* 32 Vt., 744.

In New York, replevin will lie in all cases where trespass *de bonis* can be maintained. *Pangburn* v. *Partridge,* 7 Johns., 140; *Rogers* v. *Arnold,* 12 Wend., 37. And such is the rule in New Jersey. *Bruen* v. *Ogden,* 6 Halst., 370. And in Pennsylvania. *Weaver* v. *Lawrence,* 1 Dall., 156. And in Missouri. *Crocker* v. *Mann,* 3 Mo., 472.

The plaintiffs' actual possession alone *prima facie* entitled them to recover. Actual possession of personal property is sufficient to maintain trespass against any person but the legal owner, according to some authorities, even if the possession is illegal, and according to all, if the possession is under an assertion or color of right. *Fisher* v. *Cobb,* 6 Vt., 622. And so of trover. *Thayer* v. *Hutchinson et al.,* 13 Vt., 504; Smith's Leading Cases, 341 *et seq.*

*H. H. Wheeler*, for the defendant.

This action is founded upon section 13 of the statute "Of Replevin," and conforms to replevin in the *detinuit* at common law. To entitle the plaintiffs to maintain the action, they should have shown that they had a general or special ownership in the property replevied. Gen. Sts., 320, § 13; 1 Chitty's Pl., 158.

Their right of recovery did not depend upon an injury done by the defendant to their possession of the property, but upon their right to the property. An injury to the possession would have been sufficient to maintain trespass, but ownership was necessary in this action; the same difference exists between this action and trespass *de bonis*, that exists between ejectment and trespass *quare clausum fregit*. *Read* v. *Hawke*, Hob., 16; Yelverton, 148; 6 Bac. Ab., 53; 2 Mass., 512.

That the plaintiffs must recover upon the strength of their title to the property, is apparent from the reading of the statute itself. The remedy is only given to "*the owner or person entitled to the possession*" of the property, against one who "*unlawfully*" takes or detains it. Co. Litt., 145, *b*; 10 Mod., 25; 6 Bac. Ab., 69; 1 Chitty's Pl., 158; 2 Sel. Pr., 155; 3 Starkie Ev., 1295; 5 Mass., 303; 1 Johns., 380; 16 Wend., 345; 18 Pick., 318; 2 Green. Ev., § 561; 7 Johns., 141.

The opinion of the court was delivered by

PIERPOINT, C. J. The only question involved is whether the county court were right in holding that the plaintiffs had shown no such right to the property in question, as was necessary to enable them to maintain this action of replevin.

This question, we think, must be determined by the construction of our statute. The statute is that, when any goods, etc., shall be unlawfully taken, or unlawfully detained, from the owner or the person entitled to the possession thereof, or, when attached on mesne process, or taken in execution, are claimed by any person other than the defendant in the suit, or debtor in the execution, on which they are so taken or attached, such owner or other person may cause them to be replevied. Gen. Sts., p. 320, § 13. In section 16, on same page, it is provided that, "If it

shall appear, upon the nonsuit of the plaintiff or upon trial, that the defendant is entitled to a return of the goods, he shall have judgment therefor accordingly."

Under this statute, any person who is entitled to the possession of any goods or chattels, may maintain replevin against any person who unlawfully takes or detains such goods or chattels from him. To entitle him to the possession, it is not necessary that he should be the owner, or that he should be entitled to the possession as against all others. It is sufficient if he is entitled to the possession as against the person who takes it from him. In such case the taking it from him is an unlawful taking. A person who is in the possession, claiming the property, or an interest in it, or a legal right to the possession, may maintain replevin against any person taking the property from him, who can not show a better right to it. The defendant in the action of replevin, can prevail only when it appears that he is entitled to a return of the property, and that can be only when it appears that his right is superior to that of the plaintiff. The question is to be determined according to the respective rights of the parties to the suit.

This, we think, is apparent from the language of the statute, and is in accordance with the practice under it for many years. It has been repeatedly held that in this state the action can be maintained as an adversary proceeding, only by force of our statute, which expressly declares the circumstances under which it may be brought, and carefully prescribes the mode of procedure. See *Eddy* v. *Davis*, 35 Vt., 247, and the cases there referred to. Hence, in determining the question now before us, but little aid can be derived from the English decisions, or those of our neighboring states. Under our statute replevin has become a common and appropriate action in which to try the title to personal property.

It appears from the exceptions, that, when the plaintiffs were appointed the administrators of Bond's estate, they found a portion of the property to have been in his possession at the time of his death; other portions of it they found in the possession of third persons in the vicinity, who, recognizing Bond's title to it, delivered

it over to the plaintiffs as his administrators.    It was thus collected together by the plaintiffs, and held by them as such administrators claiming it as the property of Bond's estate.    While being so held, it was taken from them by the defendant without their knowledge or consent.    Afterward, when called upon by the plaintiffs, the defendant did not claim that he was the owner of the property, but virtually conceded that Bond was the owner.    He claimed the right to dispose of the property, and claimed half the profits on it, but said he did not consider that he had the right to take the property from Bond when he was alive.    Upon what the defendant's claim was based, does not appear.    So far as the case shows, it was a mere naked claim unsupported by any right.

Upon the facts stated by the plaintiffs' witnesses, we think they had clearly made out a *prima facie* case, the evidence tending strongly to show not only that they were entitled to the possession as against the defendant, but that the title to the property was in Bond's estate.    It was certainly sufficient to put the defendant upon the showing of his right in the property, if he would have a judgment for its return.

We think the case should have been submitted to the jury.

Judgment reversed and case remanded.