The Merchants Bank of Canada, Respondent, *v.* The Union Railroad and Transportation Company, Appellant.

Goods shipped under bill of lading drawn to order of the shipper may be transferred by delivery of the bill of lading without indorsement.

Under the code the transferee of a bill of lading may bring an action thereon in his own name against the carrier.

The firm of R. G. G. & Co. arranged with plaintiff for a credit of £10,000 sterling, in favor of their agents, T. & Co., at Yokahama, to be availed of by the drafts of T. & Co., on plaintiff's London agents, who were to accept the drafts upon the hypotheation, by the drawers, of bills of lading of teas purchased by them for R. G. G. & Co. T. & Co. shipped to New York 672 packages of tea, which were by the bill of lading deliverable to order of shippers. Plaintiff paid a draft accepted by its London agent on receipt from it of the bill of lading, invoice and consular certificate. The bill of lading was not indorsed by T. & Co. In an action upon the bill of lading, *held*, that the evidence authorized a finding that the bill of lading was delivered with intent to pass the title.

Defendant delivered the teas to R. & Co. upon a written guaranty that they would deliver "the regular bill of lading indorsed," as soon as the same reached them. It appeared by the bill of lading held by plaintiff

that five of the same tenor were signed, one whereof being accomplished the others were to be void. Defendant had possession of one of them. *Held,* that in the absence of evidence of any title in R. & Co., or that they had lawful possession of a regular bill of lading, the delivery was unauthorized; that R. & Co. could acquire no right under the bill of lading in defendant's possession; that it was the duty of defendant before delivery to have required evidence that R. & Co. had a bill of lading, and that it was no defence that defendant acted in good faith.

R. & Co. sold the teas and, as the evidence tended to show, used the avails to pay drafts drawn upon them by R. G. G. & Co., which came through plaintiff's bank as collecting agent of that firm. It did not appear that plaintiffs had any knowledge of the source from which the money was derived. *Held,* that the evidence did not tend to show that plaintiff received the proceeds of the sale; and in the absence of evidence that the money was applied or intended to be applied on plaintiff's account, that there was no question for the jury, and a refusal to submit it to them was not error.

Plaintiff recovered the value of the goods as fixed by the carriers at Yokohama. Defendant claimed that freight should have been deducted. *Held,* untenable because, 1st, no such defence was set up in the answer; 2d, defendant had in effect received the benefit of the allowance, the recovery being limited to the value at Yokohama independent of freight; 3d, defendant's claim for freight was satisfied, as R. & Co. had paid it, if not they were liable therefor.

(Argued April 11, 1877; decided April 24, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department affirming a judgment in favor of plaintiff entered upon a verdict. (Mem. of decision below, 8 Hun, 249.)

This action was brought against defendan as a common carrier, for a failure to deliver goods pursuant to a bill of lading.

In February, 1873, the firm of Ritchie, Gregg, Gillespie & Co., merchants of Montreal, applied by letter to the plaintiff, a banking institution of the same city, for a credit of ten thousand pounds sterling, in favor of their agents, Chas. Thorel & Co., at Yokohama. Such credit was to be availed of by the latter by their drafts upon the London agents of the plaintiff, the London Joint Stock Bank, the plaintiff having arranged that the latter should accept such drafts on the hypothecation by the drawers (Thorel & Co.),

of the teas purchased by them in Yokohama, for Ritchie, Gregg, Gillespie & Co. Six hundred and seventy-six packages of tea were shipped to New York by Thorel & Co., deliverable to order of shipper, as per bill of lading. The plaintiff's manager testified that the plaintiff procured and made an advance upon the six hundred and seventy-six packages of tea mentioned in the bill of lading; that the plaintiff received the bill of lading, invoice and consular certificate from the London Joint Stock Bank, in order that the plaintiff might collect or realize the amount of the invoice, and therewith retire or pay the draft of the shipper, for the payment of which the plaintiff held the bill of lading. He also testified that the plaintiff paid the amount of the draft to the London Joint Stock Bank, which had accepted it, retaining the bill as its security for the amount. The bill of lading was not indorsed by the shippers, it contained a statement that the agent of the steamer had signed five bills of lading, all of the same tenor and date, one whereof being accomplished, the others were to stand void. Shortly after their arrival in New York, by the defendant's conveyance, the defendant, who had one of the bills of lading, delivered the teas to Thomas Rigney & Co., upon the written guarantee of that firm, indorsed on its bill of lading, that they would deliver to defendant " *the regular bill* of lading, indorsed for the within teas, as soon as the same reaches us." It further appeared that after Thomas Rigney & Co. obtained the goods from the defendant on the 6th of June, 1873, they sold them for $17,307$\frac{70}{100}$, and that they received the check of the buyer to their own order, which they indorsed and deposited in bank. And further that on the 21st day of June, Thos. Rigney & Co. paid their two acceptances of the drafts of Ritchie, Gregg, Gillespie & Co., of which firm Rigney was a partner, for $10,000, and $11,700, respectively, which last two acceptances appear to have been held by the plaintiff as collecting agent of the drawers. The evidence tended to show that the avails of the sale of the teas were used toward the payment of these drafts.

The court having stated the intention to direct a verdict for the plaintiff for amount the teas were valued in the bill of lading and interest; defendant's counsel asked to go to the jury on the question:

1st. Whether the bank in Canada did not receive the proceeds of these teas, which request the court refused, and the defendant's counsel duly excepted.

2d. The defendant claimed that the freight money should be deducted, but the court held otherwise, it being admitted that the freight had been paid by Rigney & Co., at the time of the delivery of the teas to them; the defendant duly. excepted.

The court directed a verdict in accordance with its expressed intention; defendant's counsel duly excepted.

Further facts appear in the opinion.

*Ashbel Green,* for the appellant. The assignment of the bill of lading, even if it was properly indorsed, did not transfer rights upon the contract. (*Dows* v. *Cobb,* 12 Barb., 310; *Thompson* v. *Downing,* 14 M. & W., 403; *Lickbarron* v. *Mason,* 1 Smith's L. Cas. [7th Am. ed], 14; Abb. on shipping [8th ed.,], 325, 337; Dixon's Law of Shipping, 223; Parson's on Shipping and Admiralty, 192, 193; Chitty on Carriers, 186; Chitty on Contracts, 1370; *Blanchard* v. *Page,* 8 Gray, 281, 289.) The mere holder of an unindorsed bill of lading has no rights upon the contract. (*City Bk.* v. *R. W. & O. R. R. Co.,* 44 N. Y., 136; *Bk. of Rochester* v. *Jones,* 4 id., 498; *Cayuga Co. Bk.* v. *Daniels,* 47 id., 632; *First Nat. Bk.* v. *Kelly,* 57 id., 36.) To make the delivery of an unindorsed bill of lading effect a transfer of title, there must be outside evidence that such was the intent. (*Clark* v. *Draper,* 19 N. H., 419; Benj. on Sales [Am. ed.], § 696, note 813; *Brewer* v. *Salisbury,* 9 Barb., 511; *Evans* v. *Harris,* 19 id., 412; *Bethel Steam Mill Co.* v. *Brown,* 57 Me., 18; *Bk. of Rochester* v. *Jones,* 4 N. Y., 497; *Dows* v. *Green,* 24 N. Y., 643, 44 id., 136; 47 id., 632; *Dows* v. *Rush,* 28 Barb., 157; 12 id., 310; Pars. on ship'g and Admiralty,

192, 196, 195 n.; Add. on Con. [7th ed.], 484; Chitty on Car., 186; *Thompson* v. *Downing*, 14 M. & W., 403 ; *Lickbarrow* v. *Mason*, 1 Smith's L. Cas. [7th Am. ed.], 1147; 3 Kent's Com., 207; *Gardner* v. *Howland*, 2 Pick., 599; *Joyce* v. *Swann*, 17 C. B. [N. S.], 84; Kay on Shipping, 373, 376.) The court erred in allowing a draft not offered in evidence or accounted for to be proved by parol. (*Blade* v. *Nolands*, 12 Wend., 173; *Rogers* v. *Van Hoesen*, 12 J. R., 221; *Healy* v. *Gilman*, 1 Bosw., 235; *N. Y. Car Oil Co.* v. *Richmond*, 6 id., 213.) The judge erred in refusing defendant's request to go to the jury on the question whether plaintiff did not receive the proceeds of the teas. (*Thompson* v. *Van Vechten*, 27 N. Y., 569; *Justice* v. *Lang*, 52 id., 323.) The carrier, acting in good faith, is protected by his delivery to the holder of the first bill of lading presented. (Abb. on Shipping [7th ed.,], 442; *Barber* v. *Meyerstine*, L. R. [4 H. L.], 336; *Fearon* v. *Bowen*, 1 Smith's L. Cas. [7th Am. ed.], 1162; The Tigress, Brown & Lust. 43; Kay on Shipping, 345.) Plaintiff was chargeable with laches in delaying the presentation of the bill of lading, and for this reason cannot recover against the carrier. (*Bk. of N. Am.* v. *McCall*, 4 Bin., 371.) It was error to exclude evidence of custom, as bearing upon the delivery by the carrier. (*Ont. Bk.* v. *N. J. Steamboat Co.*, 59 N. Y., 510; *Sweet* v. *Barney*, 24 Barb., 534; 23 N. Y., 335; *Van Santvoord* v. *St. John*, 6 Hill, 157.)

*Amasa A. Redfield*, for the respondent. The property in the goods was transferred by the delivery to a third person of the bill of lading without indorsement. (*Bank of Rochester* v. *Jones*, 4 N. Y., 497; *City Bank* v. *Rome, etc., R. R. Co.*, 44 id., 136; *Allen* v. *Williams*, 12 Pick., 297; 3 Chitty Commercial Law, 404; 1 Pars. on Shipping, 195; *Savage* v. *Bevier*, 12 How. Pr., 166; *Westerlo* v. *De Witt*, 36 N. Y., 340; *Marine Bank* v. *Vail*, 6 Bosw., 421; *Mack* v. *Mack*, 3 Hun, 323; *Duffield* v. *Ellis*, 1 Bligh. [N. S.], 497, 542; *Briggs* v. *Dorr*, 19 J. R., 95; *Runyan* v. *Mersereau*, 11 id., 534; *Brown* v. *Brown*, 18 Conn., 410.) The pay-

ment of the proceeds of the teas by Rigney & Co. to plaintiff, so long as it did not ratify their act in taking them and accept them as its agent, constituted no defence for any party to this action. (*At. Dock Co.* v. *New York*, 53 N. Y., 64.) The claim that the freight should be allowed in mitigation of damages was properly refused. (*Sprague* v. *McKenzie*, 63 Barb., 60; *Higgins* v. *Whitney*, 24 Wend., 379.)

MILLER, J. The plaintiff's right to the teas in question was, we think, sufficiently established. It had entered into an arrangement with the firm of Ritchie, Griggs, Gillespie & Co., of the city of Montreal, for a credit of ten thousand pounds sterling, in favor of their agents at Yokahama, Charles Thorel & Co., which credit was to be made available by the latter, by their drafts upon the London agents of the plaintiff, the London Joint Stock Bank. The amounts advanced were also procured upon the pledge or hypothecation by Thorel & Co. of the teas purchased by them for the Montreal firm of Ritchie, Gregg, Gillespie & Co., which teas, it was agreed, were to be shipped to Montreal or New York, to the order of the shipper. The advancements were also to be secured by the transfer and delivery to the plaintiff of the bill of lading, the invoice, and the consular certificate. It thus had possession of all the papers which usually confer title to property of this description, and upon the strength of the arrangement made and the muniments of title mentioned had paid the drafts drawn upon the teas to pay for the purchase of the same. These facts, we think, were abundantly established. It is claimed that the plaintiff has not proved that any draft was drawn by Thorel & Co. under this arrangement, and no draft was produced on the trial, but the testimony of the manager of plaintiff's bank shows the letter of the firm of Ritchie, Gregg, Gillespie & Co., requesting the credit for the sum aforesaid, to be availed of by drafts on plaintiff's agents in London, and he testifies that their drafts on the London Joint Stock Bank, the agents of the plaintiffs, were to be used by them in payment of the

teas purchased, and that the bank transferred and transmitted the bill of lading and other papers, so that the plaintiff could collect the amount of the invoice and retire the drafts for the payment of which plaintiff held the bill of lading, and that the plaintiff afterwards paid the amount of said draft to the bank, retaining the said bill of lading as security for said amount. The same witness subsequently in his testimony refers to his previous answer in reference to his statement as to the manner in which the advance was made, and testifies that the conditions upon which the advance was made not being carried out, and the advance not having been repaid, the plaintiff received no compensation. This evidence abundantly shows that a draft was drawn, advances made, and that the teas were hypothecated as already stated to secure the amount to the plaintiff. As the evidence stood the plaintiff made out a clear and unquestioned right to the teas by indisputable facts showing the transaction, which was also supported by a possession of the bill of lading, and the other papers essential to establish its claim to the teas. And unless it was necessary that the bill of lading should be actually indorsed by Thorel & Co., its title was beyond any dispute. We think the plaintiff's title was perfect and complete without such indorsement. The rule is well settled that property or goods shipped by a bill of lading drawn to order, may be transferred by delivery to a third person without any indorsement. (*Bank of Rochester* v. *Jones*, 4 N. Y., 497, 507; *City Bank* v. *Rome, W. & O. R. R. Co.*, 44 N. Y., 136.) Bills of lading are choses in action, and no rule is better established than that instruments of this character may be transferred for a valuable consideration by delivery only. Although the plaintiff was not a party to the bill of lading, it cannot affect his right to the contract contained in the same, if he acquired it lawfully. We are referred to some cases in support of the position that the assignment of the bill of lading does not transfer rights upon the contract, and that an action founded on the express contract contained in the bill of lading must

be brought by the person with whom the ship-master con-
tracted, or the owner of the goods. (*Dows* v. *Cobb*, 12 Barb.,
310, and cases cited.)    These cases are common law actions,
brought before the Code of Procedure was in operation.
Since that enactment, the real party in interest is authorized
to sue on any contract or chose in action which has been
transferred to him in his own name.    It may also be remarked
that this rule can scarcely be said to apply when the circum-
stances show that the contract was made with an express
agreement that the goods mentioned in the bill of lading
shall be hypothecated as security for advancements to be
made.

The objection urged that there was no proof that there
was an intent to pass the title by a delivery of the bill of
lading, is not well founded.    All the circumstances show
such intent.    It was passed over to the London Joint Stock
Bank to secure the drafts Thorel & Co. were making on the
bank, and by them to the plaintiff, who had advanced ten
thousand pounds upon the faith of the bill and the documents
which accompanied it, and of other bills of lading which
might be drawn.    It cannot be doubted that the very pur-
pose in view was to pass the title, as no other way was
provided for the payment of plaintiff's advances.    In *Cayuga
Co. Bank* v. *Daniels* (47 N. Y., 631), cited by the appellant's
counsel, it was said that in considering the question of title,
it must be assumed that the referee found that the bill of
lading was delivered to the plaintiff with the intent to pass
the title to it for the purpose of securing payment of their
draft upon the defendants, discounted at the bank.    At
most, the intent here was a question of fact, and it is to be
assumed that such intent was found by the jury.    Some criti-
cism is made upon the authorities cited to uphold the position
that a bill of lading drawn to order may be transferred by
delivery without an indorsement ; but we think they are
conclusive upon the question, and that the plaintiff's right
to the teas under the bill of lading was fully established.
Nor was there any proof that Thomas, Rigney & Co. held a

bill of lading and received the teas as the first party who presented the same.

Although it appears that five bills of lading had been signed, neither of them came into the hands of Rigney & Co. The defendant was in possession of a bill of lading, but this did not confer any right upon Rigney & Co. to take possession of the property. That firm never had lawful possession of a regular bill of lading, and acquired no right under the one in the possession of the defendant. The guaranty by Rigney & Co. to deliver one as soon as they should receive it did not supply the defect or confer any title upon them. No claim appears to have been made upon the trial that Rigney & Co. ever had a bill of lading in their possession, and no title was shown in them. It was the duty of the defendant before the delivery of the teas to require evidence that Rigney & Co. had a bill of lading. The right of Rigney & Co. was questioned and the suspicion of the defendant was aroused, for it was only upon a guaranty to deliver the regular bill indorsed for the teas that the property was delivered. The defendant with knowledge of the fact, that Rigney & Co. had no bill of lading, took the risk of thus parting with the teas to a party who showed no right, and must abide the consequences of its unauthorized act. Under such circumstances the defendant is not protected upon the ground that its agents acted in good faith.

There was no error in the refusal of the judge to allow the defendant's counsel to go to the jury upon the question whether the Bank of Canada did not receive the proceeds of the teas. The proof did not show, or even tend to establish that such was the fact. Rigney & Co. were paid for the teas and they did not pay over the amount received to the plaintiff, or on its account. It is true that they paid, three days after this money was collected, two drafts, amounting to $21,700, drawn by Ritchie, Gregg, Gillespie & Co. on them, which came through the plaintiff's bank as collecting agents of that firm. Very likely these were paid in part from the proceeds of the teas; but there is no evidence that the

plaintiff had knowledge of this fact, or that this money was received in any way for its own benefit, or was applied on the plaintiff's drafts, or on its own account.

As the case stood, the plaintiff was merely collecting these drafts for the benefit of the firm who drew them, and had no control over the moneys received, except to credit them to such drawers. The burthen of proof was on the defendant, and without testimony that they actually were applied, or intended to be applied, on the account of the plaintiff, there was no question for the jury upon the evidence in this respect. This fact could have been readily made to appear, if true, and in the absence of any such evidence it must be assumed that none could be given.

There is no ground for claiming that the freight should have been deducted. No such defence is set up in the answer. If it was, however, in the case, it was not available, as the plaintiff only recovered the value of the goods as fixed by the carriers at Yokohama, independent of the freight. Besides the freight has already been paid by Rigney & Co., who assumed to take possession of the teas, or they are liable therefor, and the defendant's claim has thus been satisfied.

There was no error in any of the rulings upon questions of evidence, or in any respect, and the judgment should be affirmed.

All concur except ALLEN, J., not voting.

Judgment affirmed.