FIRST NAT. BANK OF CINCINNATI v. FELKER.

(Circuit Court, W. D. Arkansas, Ft. Smith Division. February 18, 1911.)

1. CARRIERS (§ 58*)—PURCHASER OF DRAFTS WITH BILL OF LADING—TITLE ACQUIRED.

A purchaser of drafts, drawn by a shipper, payable to itself, and bills of lading, consigning to itself goods against which the drafts were drawn, and which goods the shipper had agreed to sell to a third person, acquires the title of the shipper with the power of jus disponendi of the shipper, and it may divert and sell the goods, and the third person may not complain thereof.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 58.*]

2. TROVER AND CONVERSION (§§ 10, 11*)—WHAT IS "CONVERSION."

Where a purchaser of drafts, drawn by a shipper, payable to itself, and bills of lading, consigning to itself goods against which the drafts were drawn, and which goods the shipper had agreed to sell to a third person, forwarded the drafts and bills of lading to a banker for collection with instructions to deliver documents only on payment, the purchaser reserved the title and jus disponendi, and the banker delivering the goods to the third person before payment and the third person receiving the goods were guilty of conversion, a wrongful delivery of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

goods. either negligently or willfully, made by one entrusted with the custody of them, being a conversion.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 84–98; Dec. Dig. §§ 10, 11.*]

3. ACTION (§ 28*)—TROVER AND CONVERSION (§§ 10, 11*)—REPLEVIN (§ 9*)—POWERS.

Where the banker delivered the goods to the third person prior to payment, the purchaser could ratify the tortious act and sue the third person for the price, or in trover for conversion, or in replevin for the goods, or he could sue the banker for conversion.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 196–215; Dec. Dig. § 28;* Trover and Conversion, Cent. Dig. §§ 84–98; Dec. Dig. §§ 10, 11;* Replevin, Cent. Dig. §§ 69–82; Dec. Dig. § 9.*]

4. CARRIERS (§ 58*)—DRAFTS—AGENTS FOR COLLECTION—POWERS.

Where the purchaser sued the banker for conversion for the tortious delivery, the banker could not defend on the ground that the purchaser was indebted to the third person for damages for breach of warranty by the shipper because there was no warranty by the purchaser, because the goods were tortiously converted before a sale, a warranty arising only out of contract.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 58.*]

5. TROVER AND CONVERSION (§ 51*) — DRAFTS — AGENTS FOR COLLECTION — POWERS.

Where a banker, receiving for collection drafts with bills of lading with instructions not to deliver prior to payment, delivered prior to payment, the measure of damages for his conversion of the goods was the face value of the drafts, representing to his knowledge the full price of goods, and legal interest from date of conversion.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. § 267; Dec. Dig. § 51.*]

Action by the First National Bank of Cincinnati against W. R. Felker, doing business under the name and style of the Bank of Rogers. Judgment for plaintiff.

The court finds from the record in this case the following facts: The plaintiff is a corporation organized under the laws of the United States, and was when this suit was instituted, and has ever since been, and is now, a resident and citizen of the state of Ohio. The defendant is a citizen of the state of Arkansas. and was when this suit was brought, and ever since has been, and is now, a resident of the Ft. Smith division of the Western district of Arkansas. The United States Can Company is a corporation organized under the laws of the state of Ohio, and was at the institution of this suit, and ever since has been, and is now, a citizen and resident of that state, and has its principal place of business in Cincinnati, in the state of Ohio.

The plaintiff purchased from the United States Can Company six sight drafts, drawn at Cincinnati. Ohio, by the latter company, and payable to itself, and by it indorsed to the order of the plaintiff. The drafts were all drawn on the Rogers Canning Company, of Rogers, Ark., "pay through Bank of Rogers, Rogers, Arkansas," as follows: August 20, 1910, $914.83; August 22, 1910, $663.92; August 27, 1910, $655.75; August 31, 1910, $791.16; September 8, 1910. $659.49; September 29, 1910. $734.63—Total, $4.419.78. The purchase was made by plaintiff and the drafts indorsed to it on the several days the drafts bear date, which drafts bore a stub slip containing the following: "No protest," and immediately thereunder the words: "(Take this off before presenting)." These drafts were drawn for the full purchase price of certain car load shipments of cans. and to each draft was attached a bill of lading which at the date of purchase was indorsed by the United States Can Company. and both the drafts and bills of lading so indorsed on those dates. respectively, delivered on those dates to the plaintiff. The bills of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lading consigned the cans covered "to order of United States Can Company, destination, Rogers, Arkansas, notify Rogers Canning Company at Rogers, Arkansas." The United States Can Company was the shipper, and the cans covered by the several drafts and bills of lading were shipped in car load lots in conformity with the bills of lading. The United States Can Company was a regular customer of the plaintiff bank, and the full face value of the several drafts was placed by the bank on the several dates of their purchase to the credit of the United States Can Company. On the several dates of these purchases, the United States Can Company had to its credit a balance with plaintiff bank. The account of the United States Can Company with the plaintiff bank from the time of the purchase of the first draft to the 25th of October, 1910, varied, new deposits being made and checks being drawn against it in the regular course of business, during which period the amount checked out was several times as great as the sum total of the drafts in question, and on the 19th of October, 1910, its account with the plaintiff was overdrawn $655.91, so that the United States Can Company received and drew out of the plaintiff bank the sum total of the full amount placed to its credit by the plaintiff on account of the purchase of said drafts. This was all done some time before any question was raised by any one with the plaintiff about the drafts or the cans covered by said drafts and bills of lading. The plaintiff on the several dates it purchased the drafts and bills of lading forwarded them to the defendant for collection for its credit, with letters of instruction to "deliver documents only on payment." The defendant bank, in violation of that instruction, delivered the cans covered by the several bills of lading and drafts to the Rogers Canning Company, which company used them in its business before plaintiff received notice of their delivery. Just when the cans were delivered is not shown, but it is clear from the defendant's own evidence that they were delivered a considerable time before the plaintiff was advised of it, and long after the United States Can Company had checked out of plaintiff's bank the full proceeds of the drafts, and before plaintiff had any notice that there was any question about the drafts, or the cans covered by the drafts, or the bills of lading. On November 8, 1910, the Rogers Canning Company paid the defendant the full amount of the drafts, and took them up, and immediately instituted suit against the United States Can Company in the state court, and garnished the money in the hands of the defendant as the money of the United States Can Company, and the same is now tied up in defendant's bank by that proceeding. The plaintiff never has in any way ratified the act of defendant in delivering the cans to the Rogers Canning Company without payment of the drafts, and on the 22d of November, 1910, instituted this suit for his tortious act in delivering the cans without first having received payment of the drafts. Plaintiff has received nothing on account of the several drafts and bills of lading.

Rose, Hemingway, Cantrell & Loughborough, for plaintiff.
Read & McDonough, for defendant.

ROGERS, District Judge (after stating the facts as above). At the time plaintiff purchased the several drafts and bills of lading, it was undeniably true that the drafts and the cans covered by the bills of lading were the absolute property of the United States Can Company. That company could have shipped them anywhere and sold them on any terms and to anybody it saw fit, and neither the Rogers Canning Company, nor any one else, had any legal right to complain. When the plaintiff purchased from the United States Can Company the drafts and bills of lading, it is undeniably true that it acquired all the title, coupled with all the powers of jus disponendi which its assignor, the United States Can Company possessed before the latter parted with its title. The plaintiff, therefore, might have diverted and sold the cans to whom it pleased, and the Rogers Canning Company in that event would have had no legal right to complain. Dows

et al. v. National Exchange Bank, 91 U. S. 618, 23 L. Ed. 214, where the whole subject of the effect of assigning the drafts with bills of lading attached is fully and ably discussed.

The plaintiff, however, forwarded to defendant the drafts and bills of lading for collection. In doing so it forbade him delivering the drafts and bills of lading, which in law is the equivalent of forbidding him to deliver the cans covered thereby, until the drafts were paid. The instructions clearly reserved in the plaintiff the title and the jus disponendi of the cans covered by the bills of lading. 2 Daniel on Negotiable Instruments, par. 1734b. The defendant bank was the agent of plaintiff for a specific purpose, and that only. That agency was to hold the cans until the drafts were paid, then deliver the cans to the Rogers Canning Company, and remit the proceeds to plaintiff. If at this juncture on presentation by the defendant the Rogers Canning Company had declined to pay the drafts, the plaintiff had the right to do what it pleased with its cans. Indeed, it had that right with or without ever presenting the drafts for payment at all. 2 Daniel on Negotiable Instruments, par. 1734b; 91 U. S., 23 L. Ed., supra. There was therefore no contractual relation between plaintiff and the Rogers Canning Company, or, if any, it gave the Rogers Canning Company no right to the title or possession of the cans without first paying the drafts, and no right to, in any way, control their disposition. Id. par. 1734c. Up to this juncture plaintiff had in no way given any warranty of the character of the goods in question to the Rogers Canning Company, because the Rogers Canning Company had not purchased the cans. They were not its property. Id. Whatever warranty as to the character of the goods may have been entered into by the United States Can Company with the Rogers Canning Company, that warranty could have no effect whatever as to the United States Can Company until the Rogers Canning Company has acquired title to the goods; a fortiori, it could have no effect as to the plaintiff. Plaintiff had incurred no new obligations to the Rogers Canning Company by simply purchasing the drafts and the bills of lading.

Such was the status of the parties when the defendant in violation of the positive instructions of his principal, the plaintiff, delivered the cans to the Rogers Canning Company, and kept the plaintiff in ignorance of its illegal and unauthorized act until the Rogers Canning Company had used the cans in its business, and the plaintiff was thereby deprived of the power to sue and recover the cans. This was clearly an act of conversion by both the defendant and the Rogers Canning Company. Dows et al. v. National Bank of Exchange, 91 U. S. 637, 23 L. Ed. 214. In Hobbs et al. v. Chicago Packing & Provision Co., 98 Ga. 576, 25 S. E. 584, 58 Am. St. Rep. 320, Lumpkin, J., said:

"A wrong delivery of goods either negligently or willfully made by one intrusted with the custody of them is in law a conversion." Gregg v. Bank of Columbia, 72 S. C. 458, 52 S. E. 195, 110 Am. St. Rep. 633.

It requires no authority to support the principle that plaintiff might have ratified the tortious act of its agent in delivering the cans without first having received payment of the drafts and sued the Rogers

Canning Company for the purchase price of the cans, or it might have sued it in trover for their conversion, or, if the goods could have been found, maintained replevin therefor. What the measure of damages is in such cases is of no importance, as the plaintiff elected to pursue neither remedy. What defense the Rogers Canning Company in either of such events might have urged is unimportant also, for the question is not presented. On the contrary, plaintiff elected to treat the action of its faithless agent as a conversion of its cans, and look to him for redress for its injury. It needs no authority to sustain plaintiff's right to recover in this action. 91 U. S. 637, 23 L. Ed. 214, supra. Indeed, I do not understand the right of recovery as against the defendant is in dispute. Felker had no interest in the goods, and neither plaintiff nor the United States Can Company owed him anything. He sets up no such defense. His relation to the plaintiff was solely that of an agent. After he had converted the cans to his own use by delivering them in violation of the positive instruction of his principal, and subsequently by concealing that fact deprived the plaintiff of the right to pursue and recover the cans, and still later collected from the Rogers Canning Company the full face value of the drafts drawn for the purchase price of the cans, he now seeks to defend plaintiff's right of recovery against him for his tortious act by alleging that plaintiff is indebted to the Rogers Canning Company for damages for a breach of warranty by the United States Can Company as to the character and quality of the very cans of the plaintiff, which both the defendant and the Rogers Canning Company had tortiously converted to their own use, which cans were never, in fact, sold to the Rogers Canning Company by either the plaintiff or the United States Can Company. True, the United States Can Company agreed to sell the Rogers Canning Company the cans, but they were not to be delivered, or the title passed, until paid for. Until paid for there was no sale. Until a sale, the cans remained the property of the plaintiff. 91 U. S. 637, 23 L. Ed. 214. The cans were tortiously converted before the sale was completed. No warranty can arise out of a tort. A tort is not an agreement. A warranty is a contract, or arises out of a contract. Just how the Rogers Canning Company can recover from the United States Can Company, or its assignee, the plaintiff, for a breach of warranty for the sale of defective cans which neither the United States Can Company or the plaintiff ever sold to the Rogers Canning Company, but which the Rogers Canning Company tortiously converted to its own use, is not sustained by any known authority, or very readily perceived. If plaintiff had waived the tort of its faithless agent, the defendant, and sued the Rogers Canning Company for the purchase price of the cans wrongfully delivered to the Rogers Canning Company, thereby ratifying the delivery, the sale being complete, a defense of that character could with some degree of reason and perhaps some show of authority be urged; but such a defense is wholly inadmissible in this character of case, for the obvious reason there can be no breach of warranty for the sale of defective goods if there is no sale.

What has already been said sufficiently distinguishes this case from the following cases: Searles v. Smith Grain Co. et al., 80 Miss. 688,

32 South. 287; Landa v. Lattin, 19 Tex. Civ. App. 246, 46 S. W. 48; Finch et al. v. Gregg, 126 N. C. 176, 35 S. E. 251, 49 L. R. A. 679; People's National Bank v. Brogden & Bryan, 98 Tex. 360, 83 S. W. 1098, which were cited in support of the contrary doctrine. In those cases (except the last) there was a sale and delivery and payment of the drafts to which the bills of lading were attached by the consignee, and the suits were afterwards brought for breaches of warranty as to the quality of the goods against the bank which collected the drafts, and in some cases against the consignors as well. There was no tortious conversion as in this case. The last case cited was more closely akin to the case at bar. There the goods shipped were apples, perishable, and rotting when received by the bank. The consignee was insolvent, and could neither pay for the apples nor sell them. To save something for the consignors, the bank delivered the apples to consignee, who shipped them to another merchant in a neighboring town, and accepted the consignee's draft on that merchant for the purchase price. The merchant refused to accept the apples and the draft because of the condition of the apples, and the railroad company sold the apples for the freight. The bank got nothing, neither did the consignee. The bank accepted the draft of the consignee on the merchant of the neighboring town as a means of collecting consignor's draft which it held for collection. This was unauthorized, it is true, but the result would have been the same, had he held the apples. The consignor, therefore, lost nothing, and the bank gained nothing by the course pursued, and there was no bad faith. The emergency for some action by the bank was manifest, but there is no such case as that here. The cans were not perishable; the Rogers Canning Company was not insolvent; the defendant collected the full purchase price of the goods from the Rogers Canning Company. The difference in the facts distinguish that case from the one at bar.

Only one question remains. What is the measure of damages in a case like this. It does not seem that a faithless agent ought to be allowed to profit by his own wrong. Defendant converted the cans to his own use, and afterwards collected the purchase price. Shall he be allowed to keep any part of it? He has no claim on the fund. The Rogers Canning Company has none, because it did not purchase the cans from the plaintiff. The only evidence is that the drafts were drawn for the full purchase price of the cans. Defendant knew the price when he converted them to his own use. He also knew that, if the drafts were not paid, plaintiff had the right to sell them, and that he did not. In such a case I think the measure of damages is the face of the drafts, with 6 per cent. interest from the date of the conversion. As throwing light on this subject, see 3 Am. & Eng. Enc. Law (2d Ed.) p. 814, and cases cited in the last paragraph of note 4.

The evidence does not show the precise date on which the conversion occurred, but the defendant admits in his deposition the delivery of the cans as early as October 10, 1910, and interest should therefore be allowed from that date.

The court finds the issues for the plaintiff, and assesses its damages in the sum of $1,513.98.