# Stamford Rolling Mills Company, Appellant, v. Erie Railroad Company.

*Foreign attachment—Railroads—Goods in transit—Stoppage in transit—Negotiable bill of lading—Interstate commerce—Evidence —Burden of proof—Dissolution of attachment—Acts of March 11, 1909, P. L. 19; June 9, 1911, P. L. 838; May 19, 1915, P. L. 543.*

1. In foreign attachment proceedings the burden of proof is upon the attaching creditor to establish the facts necessary to maintain the attachment.

2. Where goods have been shipped by a railroad under a negotiable bill of lading they are not subject to attachment unless the bill of lading has been surrendered or its negotiation enjoined.

3. In foreign attachment proceedings it appeared that a carload of goods belonging to the defendant, a Pennsylvania company, had been shipped from Ohio and consigned to defendant in Connecticut under a negotiable bill of lading. The defendant had directed that notice be given of the consignment to the plaintiff at New York.

The bill of lading, with a sight draft attached, was presented to plaintiff, but payment was refused. The defendant then directed the railroad company to stop the shipment in transit. While the goods were in the possession of the railroad company in Pennsylvania a writ of foreign attachment was issued against them. The railroad company took a rule to show cause why the attachment should not be dissolved, on the ground that the bill of lading was negotiable, and had not been surrendered to the carrier or its negotiation enjoined. The lower court dissolved the attachment. *Held,* no error.

4. In such case it was not material whether the railroad company, the garnishee, after the stoppage in transit of the goods, continued to hold them as carrier, or was then to be regarded as a warehouseman or mere bailee, in view of the fact that the provisions of the Act of March 11, 1909, P. L. 19, Section 25, relating to warehouse receipts, and the Act of May 19, 1915, P. L. 543, Section 39, relating to the sale of goods, are identical in effect with the Act of June 9, 1911, P. L. 838, Section 24, providing that "If goods are delivered to a carrier by the owner......and a negotiable bill is issued for them, they can not thereafter, while in the possession of the carrier be attached by garnishment or otherwise,......unless the bill be first surrendered to the carrier or its negotiation enjoined."

5. In such case there is no merit in the contention that as the shipment was interstate, the effect to be given to the bill of lading was a question of general law. The state may make valid enactments in the exercise of its legislative power to promote the welfare and convenience of its citizens, although in their operation they may have an effect upon interstate traffic. Cars engaged in interstate commerce may be attached under state laws.

6. The statutory restriction as to the attachment applies so long as the goods are in the possession of the carrier, and it is not material whether the goods were actually in transit or stopped.

*Appeals—Questions of law and fact—Practice, Supreme Court.*

7. An appeal from an order dissolving a foreign attachment will be entertained where the facts are not in dispute and the question presented is purely one of law.

Argued March 12, 1917, Appeal, No. 364, Jan. T., 1916, by plaintiff, from order of C. P. Susquehanna Co., Aug. T., 1916, No. 190, dissolving writ of foreign attachment in case of Stamford Rolling Mills Company v. Jacob L. Lipton, doing business under the name of the Acme Iron & Steel Company, defendant, and Erie Rail-

road Company, Garnishee. Before Brown, C. J., Mes-
trezat, Potter, Frazer and Walling, JJ. Affirmed.

Rule to show cause why a foreign attachment should
not be dissolved. Before Denney, P. J.

The facts appear by the opinion of the Supreme Court.

The lower court dissolved the attachment. Plaintiff
appealed.

*Error assigned,* among others, was in dissolving the at-
tachment.

*R. W. Archbald,* with him *J. Y. Brinton* and *E. R. W.
Searle,* for appellant.—The Act of June 9, 1911, P. L.
838, Section 24, does not apply to an interstate ship-
ment: Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co.,
241 U. S. 190; North Pacific Ry. Co. v. Wall, Admr., 241
U. S. 87.

The goods having been stopped in transit by the ship-
per, the defendant, and the garnishee having allowed it
to be done, the goods were attachable in his hands:
Landa v. Holck & Co. et al., 129 Mo. 663 (31 S. W. Repr.
900); Cooley v. Minn. Transfer Ry. Co., 53 Minn. 327
(55 N. W. Repr. 141); Rosenthal v. Weir, 170 N. Y. 148
(63 N. E. Repr. 65); Pontifex v. Midland Ry. Co., L. R.
3 Q. B. Div. 23; Penna. R. R. Co. v. American Oil Works,
126 Pa. 485; Jenks v. Fulmer, 160 Pa. 527.

*William A. Skinner,* for appellee.—The Act of June 9,
1911, Section 24, P. L. 838, applies to interstate ship-
ments whether actually in transit or stopped. Its effect
is not to interfere with interstate commerce but is rather
a law enforcing noninterference, and as such is valid.
It is the duty of the carrier to deliver a consignment to
the consignee or its endorsee only upon surrender of the
bill of lading: Louisville & Nashville R. R. Co. v. Ken-
tucky, 183 U. S. 503.

The bill of lading is a contract governing the rights and obligations of the shipper and carrier, although the service of carrying has been completed and the goods are held by the carrier strictly as warehouseman: Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Dettlebach, 239 U. S. 588.

OPINION BY MR. JUSTICE POTTER, April 16, 1917:

The Stamford Rolling Mills Company, a corporation of the State of Delaware, issued a writ of foreign attachment in the Court of Common Pleas of Susquehanna County, Pennsylvania, against Jacob L. Lipton, doing business as the Acme Iron & Steel Company, defendant, and the Erie Railroad Company, as garnishee. It appears that on May 23, 1916, the Acme Iron & Steel Company shipped from Cleveland, Ohio, over the New York, Chicago & St. Louis Railway and its connecting lines a carload of "copper scrap," consigned to its own order at Springdale, Connecticut, directing that notice be given to plaintiff at its New York office. The railroad delivered to the shipper what is known as an order bill of lading for the contents of the car. The bill of lading, with a sight draft attached, was presented to plaintiff on May 25, 1916, but payment was refused. Thereupon defendant directed the carrier to stop the shipment in transit, and on or about June 10, 1916, the car was stopped at Susquehanna, Pennsylvania, while in possession of the Erie Railroad Company. On June 28, 1916, the present writ of foreign attachment was issued to attach the contents of the car, and the railroad company was summoned as garnishee. Upon petition of the latter, a rule to show cause why the attachment should not be dissolved, was granted, an answer filed and depositions taken, and an order made dissolving the attachment on the ground that the bill of lading was negotiable and that, as the bill had not been surrendered to the carrier or its negotiation enjoined, the goods could not be attached. Plaintiff has appealed, and counsel for appellee

has filed a motion to quash the appeal on the ground that it does not lie to an order dissolving a writ of foreign attachment. If it were necessary to review the decision of the court below upon any question of fact, this appeal would not be entertained. But the fifth assignment of error brings before us the entire proceeding and shows the basis of the court's action in dissolving the attachment. There is no conflict as to evidence, no question as to credibility of witnesses, no fact in dispute. The question presented is purely one of law, and as such it may be reviewed. By plaintiff's answer it is expressly admitted that the bill of lading was a negotiable instrument. Being negotiable, Section 24 of the Act of June 9, 1911, P. L. 838, protects the goods which it represents from attachment, or garnishment "unless the bill be first surrendered to the carrier or its negotiation enjoined." The garnishee avers in its petition that the bill has not been surrendered to it, and that its negotiation has not been enjoined. This averment is not denied by the answer and there is neither allegation nor proof that it has been surrendered or that its negotiation has been enjoined. The burden of proof was upon the attaching creditor to establish the facts necessary to maintain the attachment.

Whether the garnishee, after the stoppage in transit of the goods, continued to hold them as carrier, or was then to be regarded as a warehouseman or mere bailee, the result is the same. The Act of March 11, 1909, P. L. 19, Section 25, relating to warehouse receipts, and the Act of May 19, 1915, P. L. 543, Section 39, relating to the sale of goods, both contain provisions on the subject under discussion which are identical with the provision of the Act of 1911. The language of the statutes is plain, and leaves no room for construction. Unless the bill of lading has been surrendered or its negotiation enjoined, the goods are not subject to attachment. The court below was, therefore, entirely right in dissolving the attachment.

There is no merit in the suggestion that, as this was an interstate shipment, the effect to be given to the bill of lading is a question of general law. Even if this were so, we do not know that it would make any difference. In the absence of a statute protecting the carrier under such circumstances, plain common sense would prevent the surrender of the goods under attachment while a negotiable bill of lading for them was outstanding, which might convey title to the goods to a third party. But the plaintiff in this case sought the aid of a State court, in pursuance of a purely statutory remedy, and is bound by the terms of the State law. As a matter of fact, no federal statute has been cited which gives to a creditor the right to a writ of foreign attachment. Moreover our Act of 1911 in no way interferes with interstate commerce. On the contrary, its effect is to prevent interference which might otherwise be attempted by attachment of goods in transit.

In Penna. R. R. Co. v. Hughes, 191 U. S. 477, Mr. Justice DAY said (p. 488): "It is well settled that the State may make valid enactments in the exercise of its legislative power to promote the welfare and convenience of its citizens, although in their operation they may have an effect upon interstate traffic."

In Davis v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co., 217 U. S. 157, it was expressly held that cars engaged in interstate commerce may be attached under state laws. Mr. Justice McKENNA said (p. 177): "It is very certain that when congress enacted the Interstate Commerce Law it did not intend to abrogate the attachment laws of the states."

Counsel for appellant also argues that the restriction applies only to goods in transit, and that if stopped, as they were in this case, the protection ceases, and they become liable to attachment. The statute, however, applies so long as the goods are in the possession of the carrier. The language is: "If goods are delivered to a carrier by the owner,......and a negotiable bill is issued

for them, they cannot thereafter, while in the possession of the carrier, be attached by garnishment or otherwise." Aside from this, as previously stated herein, even if the capacity in which the carrier holds the goods be changed, by the stoppage in transit, to that of warehouseman, or of bailee generally, the Acts of March 11, 1909, and May 19, 1915, above cited, would continue the exemption.

The assignments of error are overruled, and the judgment is affirmed.