MARY V. QUIGLEY *v.* CLARENCE E. WILEY.

February Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed May 7, 1935.

254

*George M. Goddard* and *William L. Scoville* for the defendant.

256

*Marvelle C. Webber* and *Christopher A. Webber* for the plaintiff.

SLACK, J. This is an action of replevin. The property in question was a carload of lumber which, as appears from the bill of lading, was shipped by Ralph H. Burnside, receiver for the C. D. Johnson Lumber Company, from Toledo, Oregon, consigned to ''order of'' shipper, destination East Dorset, Vermont, with directions to carrier to notify Perley R. Eaton, East Dorset, Vermont.

The defendant, an officer, attached this lumber as the property of Eaton in an action brought against him by the Pacific Lumber Agency, and this suit is brought under P. L. 1910 (G. L. 2099) which permits one who is the owner of personal property, or is entitled to the possession thereof, to replevy it from an officer who attaches it as the property of another. Trial was by jury. At the close of plaintiff's evidence, each

258

party moved for a directed verdict; the defendant's motion was denied; the plaintiff's was granted, and the case is here on defendant's exceptions to both rulings.

■ The undisputed evidence tended to show these facts: The lumber was shipped February 23, 1931. The contract under which it was received for transportation was the uniform bill of lading known as an "order bill of lading" and provided, among other things, that the surrender thereof properly indorsed would be required before the delivery of the property. Burnside, as receiver as aforesaid, indorsed the bill of lading *in blank,* drew a sight draft on Eaton for the price of the lumber, payable to the order of the United States National Bank of Portland, Oregon, at the Merchants National Bank in Whitehall, New York, and delivered both instruments together with an invoice of the lumber which read: "Sold to Perley R. Eaton," etc., to the first-mentioned bank. That bank indorsed the draft, "Pay to the order of any bank of banker," and sent it, together with the bill of lading and invoice, to the bank at Whitehall, New York. After the papers reached the latter bank, and while the lumber was in transit, to wit, on March 5, 1931, Eaton executed and delivered to plaintiff a bill of sale of such lumber in due form. On March 12, 1931, she arranged with the Whitehall bank to pay the draft and get the bill of lading and other papers. She paid one thousand dollars that day and the balance on May 4, 1931, and on the latter day got the draft, bill of lading and invoice. Two days later she presented the bill of lading to the agent of the carrier at East Dorset, Vermont, who cancelled the same, and she then took possession of the lumber by virtue of the writ in this case. No demand for possession of the property was shown. The attachment by defendant was made March 25, 1931. There was no evidence of the contract under which the lumber was shipped, if there was one, other than what appears in the documents above mentioned. This should constantly be borne in mind, because when, as here, the bill of lading is made for the benefit of the consignor or his order, it is very strong proof of his intention to reserve the *jus disponendi.* 4 R. C. L. page 15, par. 18; 10 C. J. page 205, and cases cited, note 56.

If plaintiff was entitled to the possession of the lumber at the time this suit was brought and no demand therefor was necessary, defendant's motion was properly denied. She insists

259

that under her bill of sale from Eaton, she having paid the draft and acquired the bill of lading, she was entitled to poses- sion, and that a demand was not required; while defendant con- tends that she got no rights under the bill of sale because Eaton had none to convey, and that a demand was necessary. He further claims that plaintiff took no rights under her bill of sale because the transaction between her and Eaton was fraudu- lent. If there was evidence of this it was not sufficient to justify the granting of defendant's motion, consequently the question before us is not affected thereby. Its effect on plain- tiff's motion, if any, is considered later.

■■ The plaintiff in support of her claim that Eaton had the general ownership of the lumber at the time he gave her the bill of sale argues, among other things, that the terms of shipment were f. o. b. Toledo, Oregon, but we find no evidence that this was so. The invoice though containing the language it did, standing alone, furnished no proof of title. *Dows et al.* v. *National. Exchange Bank*, 91 U. S. 618, 23 L. ed. 214. If this, together with the fact that the draft was drawn on Eaton and the carrier was directed to notify him, tended to show any right in him to the lumber, it was merely a right to title and pos- session of same upon payment by him of the draft. This he did not do, and the bill of sale showed that he did not intend to. Unless the transaction between him and plaintiff was fraudu- lent, he never had title or right of possession to the lumber. *Booth* v. *New York, etc., R. R. Co.*, 95 Vt. 9, 112 Atl. 894; *Bur- dett* v. *Howe*, 69 Vt. 563, 38 Atl. 240, nor does defendant claim otherwise. Such being the situation, the Whitehall bank had the right, irrespective of her bill of sale, to deal with plaintiff as it did, and she thereby acquired all the right and title that the bank had. What was its right and title?

■ A bill of lading is a negotiable document of title, P. L. 7952, "a key which in the hands of a rightful owner is intended to unlock the door of the warehouse, floating or fixed, in which the goods may chance to be." *Saunders* v. *Maclean* (1883), 11 Q. B. D. 341. It is not only a receipt from the carrier for the property delivered to it, but it is an agreement by the carrier to deliver the same, at the place named, to the consignee or to such person as the latter may designate. *Joslyn* v. *Grand Trunk Ry. Co.*, 51 Vt. 92; Williston on Sales (2d ed.) par. 283, and cases cited. It is, too, a symbol of property receipted for, and is

transferable so as to pass title to such property while in possession of the carrier as bailee when such, as here, appears to have been the intention, as effectually as if the property itself had been delivered. As to title and rights of transferee see P. L. 7958; *Tilden* v. *Minor et al.*, 45 Vt. 196; *Joslyn* v. *Grand Trunk Ry. Co.*, *supra*; *Davis & Aubin* v. *Bradley & Co.*, 28 Vt. 118, 65 A. D. 226, where earlier cases are collected. See, also, *Forbes* v. *Boston & Lowell R. R.*, 133 Mass. 154; *Commercial Bank of Keokuk* v. *Pfeiffer*, 108 N. Y. 242, 15 N. E. 311; *Merchants' Bank* v. *Union R. R. & Tr. Co.*, 69 N. Y. 373; *American National Bank* v. *Henderson & Co.*, 123 Ala. 612, 26 So. 498, 82 A. S. R. 147; *Neill & Ellingham* v. *Rogers Bros. Produce Co.*, 41 W. Va. 37, 23 S. E. 702; *Blanchard et al.* v. *Page et al.*, 8 Gray (Mass.) 281; *Brown* v. *Floersheim Mercantile Co.*, 206 Mass. 373, 92 N. E. 409; *First National Bank of Cincinnati* v. *Felker* (C. C.), 185 Fed. 678 (aff. 196 Fed. 200); *Paxson Bros.* v. *Warfield*, 6 Ga. App. 315, 65 S. E. 34; 10 C. J. pages 192 and 201; 4 R. C. L. pages 30 and 32.

■ ■ When the bill of lading, indorsed in blank by the shipper, accompanied by the draft and invoice came into the possession of the Whitehall bank, that bank acquired all the title, coupled with the power of *jus disponendi*, that the shipper had before parting possession with such documents, and whether it had the general or a special ownership in the property, or was merely acting as agent for the shipper is immaterial so far as this case is concerned. Before this suit was brought plaintiff acquired all the rights the bank had, and consequently was en-titled to the possession of the lumber, at least as against the defendant. *Sprague & Carr* v. *Clark*, 41 Vt. 6; *Tittemore* v. *Labounty*, 60 Vt. 624, 15 Atl. 196. The fact that it had been attached by defendant as the property of one who had no title or right to it did not affect her rights. Furthermore, it was not attachable by the creditors of either the shipper or Eaton while the bill of lading was outstanding. P. L. 7964; Vold on Sales, p. 335; *Hood* v. *Commercial Germania Trust & Savings Bank*, 12 Ala. App. 511, 67 So. 721; *Stamford Rolling Mills Co.* v. *Erie R. R. Co.*, 257 Pa. 507, 101 Atl. 823. See, also, *Abbe* v. *Erie R. R. Co.*, 97 N. J. Law, 212, 116 Atl. 778. As against plaintiff, defendant held the property wrongfully, and a demand was not necessary. Defendant's motion was properly denied.

■ It is equally clear that plaintiff's motion was properly granted, unless the evidence of fraud in the transaction between Eaton and plaintiff was sufficient to entitle defendant to go to the jury. Although the plaintiff's title and right of possession, as we have seen, did not depend upon the validity of her bill of sale from Eaton, if the arrangement between them was such, in effect, that he became the real owner of the lumber when the title thereto passed to her, she cannot maintain this suit. The evidence, if any, on this issue must be viewed in the light most favorable to defendant, but having asserted fraud he had the burden of proving it. Jones on Evidence, par. 192.

■ It is claimed that certain alterations that appear in the bill of sale and the lack of evidence of a consideration therefor tend to show that the transaction between Eaton and plaintiff was fraudulent. The bill of sale is all in typewriting except the signature of Eaton and the attesting witness. In the habendum clause the word "assigns" inserted after the word "administrators," and in the concluding clause the word "month," the day of the month, the words "our Lord" inserted after the words "in the year of" and the word "one" inserted after the words "one thousand nine hundred and thirty," are in heavier, or darker type than the rest of the instrument. The plaintiff testified on cross-examination that she, or a Miss Scotia in the same office, wrote the instrument; that it was all written at practically the same time, the words in darker type being added after the rest was written, and might have been written on a fresher part of the ribbon; that the instrument was delivered to her on the day on which it purports to have been written, and both she and Eaton testified that it was then in the same condition as at present. We think that her explanation of the apparent changes in the instrument is borne out by the appearance of the instrument itself. Furthermore, no evidence was offered to meet any of the foregoing, although for aught that appears Miss Scotia and the attesting witness were available. The instrument states the consideration and is under seal. No further showing of consideration was required. *Wing* v. *Peck*, 54 Vt. 245; *Barrett* v. *Garden*, 65 Vt. 431, 26 Atl. 530, 36 A. S. R. 876.

■ The plaintiff testified on direct examination that she borrowed the money with which she paid the draft from the Whitehall bank on her personal notes, one for $1,000 dated

March 12, 1931, and one for $1,675.40 dated May 4, 1931; that she deposited the money in that bank, where she then had an account, and drew her personal checks to pay the draft. This was corroborated by the notes and checks which were in evidence. The smaller note appears to be secured by ten shares of preferred Central Maine Power Company stock, and the other by a mortgage from William J. and Fannie Broidy. On cross-examination plaintiff testified that such notes were so secured; that the stock was indorsed to her but had not been transferred on the books of the company, and started to tell how she had it issued, but was interrupted by the examiner. She testified that the bank owned the mortgage, that she had no interest in it, but the bank put it in as security. It is claimed that her evidence regarding her transaction with the bank tended to show fraud in her dealing with Eaton. While the bank's method of doing business, if correctly described by her, might be questionable, in the absence of any attempt to show that Eaton was connected with the bank deal or had an interest, directly or indirectly, in the securities on which the money was raised the claim appears to be purely imaginary.

The plaintiff testified that she had been Eaton's secretary for several years. There was no evidence whether she did or did not have any other business or occupation. She testified that the lumber, after being replevied, was piled in the yard of the National Aircraft Materials Corporation at East Dorset, a company of which Eaton was a director and the president, but that it was not moved on his trucks and was not used by the company, and there was no evidence to the contrary. There was no evidence as to what finally became of the lumber. It is urged that the fact that plaintiff was Eaton's secretary; that the lumber when taken from the car was piled where it was, and its use or disposition unaccounted for by plaintiff, tended to show that the transaction between her and Eaton was fraudulent. In other words, defendant claims, in effect, that since plaintiff was Eaton's secretary, her purchase of the lumber from him will be presumed to have been fraudulent until she proved what she bought it for or did with it. Such is not the law. He had the burden of proving fraud; she did not have the burden of disproving it. The trouble with defendant's case in this particular, as well as in others, is that it is based on suspicion and conjecture rather than on evidence. There was

no evidence of fraud sufficient to take the case to the jury. *Wellman, Admr.* v. *Wales*, 98 Vt. 437, 448, 129 Atl. 317.

This disposes of all questions necessary to be considered.

*Judgment affirmed.*