## C. A. CRAMPTON *vs.* D. D. McBAIN.

May Term, 1898.

Present: Ross, C. J., TAFT, TYLER, MUNSON, START and THOMPSON, JJ.

Opinion filed January 28, 1899.

*Trustee Process—Bill of Lading—Attachable Interest.*—The defendant, being the owner of a carload of hay at a station in Canada, bargained and sold but did not deliver the hay to the trustee, and thereupon took from the railroad company a bill of lading of the hay in his own name, consigned to himself at Boston, by way of St. Albans, with directions to advise the trustee at St. Albans and hold there for orders. He then drew a sight draft on the trustee for the price of the hay, payable to a bank in Canada, and procured the same to be discounted by the bank upon the transfer thereto of the bill of lading as collateral security. The draft was presented to and refused by the trustee, after which the hay, while at St. Albans, was attached, and the trustee summoned, in the present case. *Held*, (1) that the title never passed to the trustee, and that he was not chargeable; (2) that the title did pass to the bank subject to be divested by payment of the draft, and that no interest of the defendant remained which could be attached.

*V. S. c. 71.*—Upon the facts stated, the case is not controlled by our statutes permitting a creditor to attach and sell his debtor's property that is subject to mortgage, pledge or lien.

ASSUMPSIT. Plea to the jurisdiction, that the defendant was a resident of Canada and had no attachable interest in

the property attached, and no goods, effects or credits in the hands of the trustee.   Trial by jury at the March term, 1898, Franklin county, *Rowell*, J., presiding.   Verdict directed, and judgment therein rendered, for the defendant. The plaintiff excepted.

*F. W. McGettrick* for the plaintiff.

*Wilson & Hall* for the defendant.

TYLER, J.   No question is made in respect to the validity of the attachment, provided the defendant had an attachable interest in the hay at the time of the service of the writ.

The defendant's testimony tended to show that February 2, 1897, he was the owner of the hay which was at the station of the N. Y. Cen. & Hud. R. R. Co. at St. Timothe, Ca., in the same cars it was in when subsequently attached at St. Albans; that he then bargained and sold but did not deliver the hay to the trustee; that he took from the agent of the R. R. Co. at St. Timothe a bill of lading in his name of each of the cars of hay consigned to himself at Boston by way of St. Albans, with directions therein to advise the trustee at St. Albans and to hold there for orders; that on February 3rd he drew a sight draft of that date on the trustee for $332.40, the price of the hay, payable to the order of the Hochelaga Bank of Valleyfield, Ca., and on the same day that bank discounted the draft for him and credited the amount to his deposit account, less discount and commission; that at the same time and as part of the same transaction the defendant indorsed and delivered the bill of lading to the bank as collateral security for the payment of the draft; that on February 3rd the bank forwarded the draft, with the bill of lading attached, to the Welden National Bank of St. Albans for collection, with directions not to protest for non-payment; that that bank received the papers on February 8th and at once demanded payment, which was refused, whereupon it returned the draft and bill of lading to the Hochelaga Bank, which at

once returned them to the bank at St. Albans, with directions to protest for non-payment, which was done on February 15, after demand and refusal of payment, and it then returned the draft and bill of lading to the payee; that the draft has never been paid, but it and the bill of lading have ever since been held by the Canadian bank.

The court held that the plea to the jurisdiction was sustained by this evidence and directed a verdict for the defendant, and the case comes here upon the plaintiff's exception to this ruling.

The main · question is whether the defendant had an attachable interest in the hay at the time of the service of the writ. The plaintiff's contention is that if the defendant, by the sale of the hay to the trustee, parted with all his right, title and interest in the property, a debt was thereby created from the trustee to the defendant which was attachable by the trustee process; and that if all the defendant's right, title and interest did not pass to the trustee, then whatever interest remained in him only passed to the bank conditionally and was attachable; that though the bank could not be ousted of its security, whatever interest the defendant might have over and above the amount of the bank's claim was attachable, and that this was a question to be determined by the jury upon all the evidence.

As to the first proposition the case shows that while the trustee might have accepted a delivery of the hay and paid the draft, and was so advised by the St. Albans bank, he refused acceptance and payment, therefore the title did not pass to him and he did not become the defendant's debtor, and is not liable as trustee.

Upon the facts stated the case is not controlled by our statutes. Act No. 33, Laws of 1880, enables a creditor to attach and sell his debtor's property that is subject to a mortgage, pledge or lien. It provides that he may ascertain the amount of the mortgage, pledge or lien, pay the amount

and be subrogated to all the rights of the mortgagee, etc. All these provisions are contained in ch. 65, R. L., and in ch. 71, V. S.

*Davis & Aubin* v. *Bradley & Co.*, 28 Vt. 118, and *Tilden* v. *Minor*, 45 Vt. 196, were decided before the above act was passed, but the authority to attach the reversionary interest in personal property under lease, bailment or pledge, subject to the contract rights of the party holding possession thereof, existed when the latter case was decided, that authority having been given by Act No. 8, Laws of 1858, the provisions of which are now embodied in R. L. 1189, and in V. S. 1424. In *Tilden* v. *Minor* the facts were precisely like those in the present case in respect to the delivery of the bill of lading to the bank as collateral security for the payment of a draft, and, indeed, in every other essential particular, yet no allusion is made by court or counsel to the act of 1858. On the contrary, the court said: "The indorsement and transfer of the bill of lading as collateral security for the payment of the draft, vested in the bank the title to the cargo. . . . The movement of the immense products of the West to the seaboard involves the use of large sums of money, which requires confidence and credit. To insure that, the bill of lading has been held and regarded in law as the symbol and representative of the cargo. The assignment, for honest purposes, of the bill of lading, is effectually the assignment of the cargo; and since railways have made continents navigable as well as the sea, and immense products and almost limitless tonnage are floated by their agency to the great central depots of commerce, the propriety and necessity of the rule becomes more apparent, and the duty of the court to make it certain and inflexible, more obvious."

The Massachusetts cases cited by the defendant hold that the transfer and delivery of an inland bill of lading of goods to a person who advances money upon it is not in form and effect a mortgage, but is in law a delivery of the property

itself and vests in such person the title to the goods. In *Allen* v. *Williams*, 12 Pick. 297, *Shaw*, C. J., said: "Even a sale or pledge of the property, without a formal bill of lading, by the shipper, would operate as a good assignment of the property, and the delivery of an informal or unindorsed bill of lading, or other documentary evidence of the shipper's property, would be a good symbolical delivery."

In Benj. on Sales, ed. of 1888, 334, (American note) it is stated that the bill of lading is regarded as the symbol of the property itself, and that a valid transfer thereof by the party in whose favor it runs, made before the property reaches the possession of the buyer, passes the title to such assignee of the bill of lading, and among the leading cases cited by Judge *Bennett* in support of this rule are, *Bank* v. *Jones*, 4 Comst. 497; *Bank* v. *Wright*, 48 N. Y. 1; *R. R. Co.* v. *Phillips*, 60 Ill. 190; *Schumacher* v. *Eby*, 24 Penn. St. 521.

This subject is discussed in 4 Am. & Eng. Enc., (2nd ed.) 521, 545. On page 548 the law is well summarized from many American decisions as follows: "Where the consignor draws upon his consignee for the purchase-money, and the draft, with bill of lading attached, is indorsed or transferred to some one who discounts the bill of exchange, a special property in the goods thereby passes to the transferee, subject to be divested by the acceptance and payment of the draft. And if the consignee refuses to accept the draft, the title of such transferee becomes absolute. But the acceptance and payment, by the consignee, of the draft, accompanied with the bill of lading or shipping receipt, vest the title to the goods in him."

After the defendant had delivered the hay to the railroad company, taken the bill of lading and transferred it with the draft to the Canadian bank, he had no attachable interest in the hay, and could have re-acquired an interest only by paying the draft. The bank, having the title, might

have transferred it to the trustee if he had chosen to take up the draft.

A different rule from the one above stated would tend to embarrass and interrupt interstate commerce, as was said by Judge *Redfield* in *Tilden* v. *Minor*, above cited.

*Judgment affirmed.*