ALFRED COMEAU *v.* C. C. MANUEL & SONS CO.

November Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS JJ.

Opinion filed May 27, 1911.

*Master and Servant—Injuries to Servant—Defective Machinery— Expert Testimony—Scope of—Tendency of Evidence—Declarations of Foreman—Admissibility—Motion for Directed Verdict—Question for Jury.*

Defective installation of a circular saw, or of its appliances, causing it suddenly and spontaneously to revolve after having been fully stopped, is proper subject-matter of expert testimony.

In a servant's action for injuries caused by the sudden and spontaneous starting of a circular saw after it had been fully stopped by plaintiff, evidence considered, and *held* that it tended to show that the saw was liable spontaneously to start after it had been fully stopped.

The act of the foreman of a mill in transferring an employee from running a gang saw to operating a circular saw was the act of the master, and, hence, the foreman's declarations as to the employee's inexperience, made while effecting the transfer, was admissible in evidence against the master.

An exceptor will be confined in this Court to the objection that he stated below.

Whether a circular saw, by the sudden and spontaneous starting of which plaintiff was injured, was defective or imperfect in any particular *held*, under the evidence, for the jury.

In a servant's action for injuries caused by the sudden and spontaneous starting of a circular saw that plaintiff had been operating, where the evidence tended to show that the starting was due to some defect for which defendant was responsible, but failed to show what particular

defect, it was sufficient to take the case to the jury on the question of defendant's liability.

In a servant's action for injuries caused by the sudden and spontaneous starting of a circular saw that plaintiff had been operating, whether the master had knowledge of any defect in the saw or its appliances *held*, under the evidence, for the jury.

On a defendant's motion for a directed verdict, the question is whether there is any evidence that fairly and reasonably tends to sustain plaintiff's claim, and, if there is such evidence, it is immaterial that it is contradicted, since contradictions and contradictory inferences are to be weighed by the jury.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1910, Franklin County, *Taylor*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*A. B. Rowley* and *W. B. Locklin* for the plaintiff.

It was sufficient for plaintiff to show some defect in the saw or its appliances for which defendant was liable, though plaintiff could not point out the specific defect. 1 Sherman & Red. on Neg. §223, citing *Nelson* v. *St. Paul Plow Works*, 57 Minn. 43, 58 N. W. 868; *Mooney* v. *Conn. River Lumber Co.*, 154 Mass. 407; 2 Labatt on Master & Servant, §832; 26 Cyc. 1416, note 75. Notice to the foreman of plaintiff's inexperience was notice to plaintiff. *Gregory* v. *Am. Thread Co.*, 178 Mass. 242; 1 Shear. & Red. §206; Abbott's Trial Ev. 736; *Davis* v. *Central Vermont Railway Co.*, 55 Vt. 84; *Houston* v. *Brush and Curtis*, 66 Vt. 331; *McGhee* v. *Bell*, 38 S. W. 702.

*Gaylord F. Ladd* and *Elmer Johnson* for the defendant.

When a machine is so constructed that when in repair it cannot spontaneously start, and there is no evidence of defects or want of repair, those facts conclusively rebut plaintiff's uncorroborated testimony that the machine spontaneously started at the time of the accident. *Redmond* v. *Lumber Company*, 96 Mich. 545; *Dingley* v. *Star Knitting Company*, 134 N. Y. 552; *Montanye* v. *Northern Electrical Mfg. Co.*, 127 Wis. 22; *Ash* v. *Verlenden Bros.*, 154 Pa. 246. Proof that the appliance

which caused the injury had been properly examined a short time before the accident and found secure is regarded as being conclusive in the master's favor unless the servant can show that something had occurred since the inspection to put him on inquiry.   1 Labatt, Master & Servant, §132, p. 282; *McCauley* v. *Southern R. Co.*, 10 App. D. C. 650; *U. P. R.* v. *James*, 163 U. S. 485.

HASELTON, J.   This is an action of case for negligence. Trial was by jury and verdict and judgment were for the plaintiff. The defendant excepted.

Comeau, the plaintiff, was an employee of the defendant in a veneer mill at Richford and was injured by one of its cir-cular saws.   The method of starting and stopping the saw was by shifting a belt from one pulley to another by means of a lever.   The plaintiff had at different times worked in the mill in question and had operated a jack straw machine and a tin cutting machine.   For five or six days he ran a gang saw. The day before he was injured he was set at work oper-ating the circular saw referred to.   He operated it on that day about five hours, and on the day of the injury, November 17, 1908, he had operated it about three hours when he received the injury.   His only experience in running saws was what has been stated.   It appeared that there was no danger from the gang saw, that the plaintiff was transferred from the gang saw to the circular saw because of his inexperience, and because in his operation of the gang saw he was heating it.   Before the injury, the defendant's foreman, charged with the duty of keeping the saw in repair, was told by the plaintiff that he was a green hand and that his experience in running saws was only what he had gained from running the gang saw.   When the plaintiff went to work on the circular saw, he was shown how to push the lever to stop or start the saw, that is, it was started, stopped and started again while the plaintiff was looking on. He stopped and started it himself a few times before he was injured.   The evidence tended to show that on the day of the injury, and before it occurred, the foreman told the plaintiff to stop the saw and pick the "butt-ends" out from under the saw, that the sawdust was flying in the plaintiff's face; that, there-

upon, the plaintiff stopped the saw; that he knew it was at a standstill; that he then picked up a butt-end and threw it in the waste basket, did the same thing a second time, reached his hand down a third time, when the saw started up and caused the injury. The evidence tended to show that there was nobody around who could have started up the saw, that the plaintiff did not know that the saw would start of itself, that his attention had never been called to any such possibility, and that he had no idea of it. It appeared that the saw had been in place about a year and a half and that when installed it worked all right, and that the belt would stay where it was put. An expert witness called by the plaintiff testified, without contradiction and without objection, to the effect that if such a saw after having been fully stopped started up of itself the starting up would be due to some improper and defective condition in the machinery that could and should be discovered by a competent inspector; that if the starting up was because the shafting was out of line, or the pulleys out of order, or the belts stretched or otherwise faulty, the liability to start up would continue until the defect was remedied. The expert testified, under objection and exception, in answer to a hypothetical question, that if a saw set up and adjusted in the manner assumed in the question started up of itself after being fully stopped that fact would indicate a defect somewhere; that the defect might be in the lining of the shafting; in the lacing of the belt, in the stretching of the belt on one side more than on the other, or in the condition of the pulleys; that with proper equipments in the respects indicated in the question the saw would not start up of itself after being fully stopped. The first ground of objection to this testimony was that the subject matter was not proper for expert testimony. However, we think it was, and the defendant does not distinctly rely upon this ground of objection. The second ground of objection was that the part of the question descriptive of the machinery inquired about was not sufficiently definite to make the answer to the question of any value. But the question, which need not be recited, was not open to this second objection. *McKinstry* v. *Collins*, 74 Vt. 147, 153, 52 Atl. 438; *State* v. *Doherty*, 72 Vt. 381, 392,

48 Atl. 658, 82 Am. St. Rep. 951; *Johnson* v. *Castle*, 63 Vt. 452, 21 Atl. 534; *State* v. *Woodbury*, 67 Vt. 602, 32 Atl. 495.

The third objection was that there was no evidence in the case tending to show that the saw in question would start of itself and that, therefore, the evidence called for and elicited was immaterial.

The evidence of the plaintiff himself as to how the saw started upon the occasion of the injury has already been referred to.

Homer Royce who operated the saw for a period of about three months, ending about eight months before the accident, testified to the effect that he had stopped the saw and gone to work close by, and upon returning to his work at the saw had found it running, although in the meantime he had been close by and had seen no one around the saw.

Salime Ryea, who operated the saw during a period ending about three months before the accident, testified to the effect that he had sometimes stopped the saw and after holding the lever over some six or eight seconds had gone away, and upon coming back had found the saw running, that this had happened eight or ten times that he was positive of. He testified that the foreman would say to him: "Why didn't you stop the saw?" and, that every time the foreman said that, he would reply that he had stopped the saw; that he didn't know what started the saw; that after Mr. Warner, the foreman, spoke to him he was more careful and didn't have so much trouble with it. Napoleon Gordon testified that he operated the saw, off and on, for a couple of months in the summer or spring before the accident, and that while so operating it he discovered something wrong about it, its starting up, that he stopped the saw to go at some other work and upon turning around found the saw running, that he took particular notice of this a couple of times. Upon cross-examination this witness testified that his way was to throw the lever over but that he never held the lever for the saw to stop dead still.

William Gossley ran the saw for the five or six weeks just preceding the time when the plaintiff was set to work at it and was injured. Gossley explained the use of the lever in starting and stopping the saw and testified that he discovered some-

thing wrong about it, that on three or four occasions, three that he remembered, he had stopped it, and after going off and coming back had found it running. He testified that he told the foreman that the saw "kept starting alone", that the foreman said that was because the witness didn't hold the lever long enough and that the witness replied that he did. Gossley testified that on the occasions when the saw started up he was sure that it had fully stopped, that he had seen it stop, and that he didn't know what made it start up.

Phillip Fuller testified that he ran the saw for five or six weeks for a period ending four or five months before the accident, that while running it he discovered that there was something wrong about it in that, if, when the belt was thrown off from the tight pulley, the lever was not held back quite a while, eight or ten seconds, the belt would run back from the loose pulley to the tight pulley and start the saw; that on five or six occasions he had held the lever back eight or ten seconds and had so stopped the saw, and after being away, sometimes a minute or a minute and a half, would come back and find it running, but that it never started up under his observation and that so he did not know what started it. We think that the testimony of these various witnesses had a tendency to show that the saw was liable to start up "by itself", to use the language of the bill of exceptions, although it appeared that the saw was commonly used by a good many employees, and so we consider that there was no ground for the third and last objection to the hypothetical question.

In connection with the testimony as to the plaintiff's inexperience, the plaintiff was permitted, subject to objection and exception, to show that the foreman of the defendant who took the plaintiff from the gang saw and put him upon the circular saw said to the plaintiff while transferring him, and as a reason for the transfer, that he hadn't had experience enough with that saw, that he was heating the saw. Before this evidence was received there was some discussion of its materiality at the bench, and after the defendant's counsel had made various objections to the evidence offered, the plaintiff's counsel said: "What do you say as to the defendant's knowledge of this plaintiff's inexperience?" The defendant's counsel replied:

"Well, I don't know anything about that." Thereupon the court properly admitted the evidence, for the transfer was the master's act, and the declarations of the agent who effected the transfer made in the execution of his agency was admissible against the principal. *Austin* v. *Chittenden*, 33 Vt. 553; *Terrill* v. *Tillison*, 75 Vt. 193, 54 Atl. 187; *McNeish* v. *Hulless Oat Co.*, 57 Vt. 316; *Brink* v. *Insurance Co.*, 49 Vt. 442, 459; *Earle* v. *Grout*, 46 Vt. 113, 126; *Curtis* v. *Ingham*, 2 Vt. 287.

The defendant in argument before this Court claims that the evidence last referred to was inadmissible for the reason that there was nothing in the case tending to show that the injury to the plaintiff resulted from want of instructions, and that so the plaintiff's inexperience and the defendant's knowledge thereof were immaterial. But the defendant's counsel pointed out to the trial court the grounds of immateriality relied on, and since this was not one of them, this claim is not at this point considered. The rule applicable is well settled. However, the question of duty to instruct arises elsewhere in the case, and will be there considered.

At the close of the evidence the defendant moved for a verdict in its favor. The first ground of the motion, as the grounds of the motion are arranged in the defendant's brief, was: "Because there is no evidence in the case tending to show that the saw in question ever started up by itself before the injury to the plaintiff." We have already seen that there was evidence having such a tendency.

The second ground of the motion reads: "Because there is no evidence in the case which tends to show that either the saw, saw-frame, main-shaft, counter-shaft, pulleys, belts, lever, shifter, or any part of the appliances in question or the arrangement of them was defective, insufficient, faulty, imperfect, or incomplete in any respect or particular." But as we have already seen the testimony of the expert witness in connection with that of the other witnesses tended to show that there was a defect or fault in some one of these particulars.

Both parties argue this second ground of the motion as if it raised the question of whether in order to take the case to the jury it was necessary for the plaintiff to introduce evidence tending to show that the starting up of the saw was due to

some specific defect.   But  it was enough to make the question one for the jury if there was evidence fairly tending to show that the starting up referred to by the witnesses whose testimony we have reviewed was due to a defective condition of the machinery for which the defendant was responsible.

The third ground of the motion reads: "Because there is no evidence in the case which tends to show notice to, or knowledge on the part of, the defendant that said saw and appliances or any part of them, were in any way defective or out of repair or that there was any fault in the arrangement or adjustment of them."   But the testimony of the witnesses Ryea and Gossley as to what they told the foreman in charge, while they were at work on the saw, testimony already set out in substance, tended to bring home to the defendant notice of some defect or want of repair, for notice to the foreman, while he was acting as such, was notice to the principal; and besides, circumstances testified to tended to bring to the knowledge of the defendant a defective condition of the machinery.  *Davis* v. *Central Vermont R. Co.*, 55 Vt. 84, 94, 45 Am. Rep.  590; *Houston* v. *Brush*, 66 Vt. 331, 349, 29 Atl. 380; *Marshall* v. *Dalton Paper Mills Co.*, 82 Vt. 489, 500, 74 Atl. 108.

The fourth ground of the motion reads thus: "Because there is no evidence in the case tending to show that the defendant had notice or knowledge of any defect in the operation of the saw, belts, shaft, pulleys, or any part of the appliances in question, or that the saw ever started up by itself before the injury to the plaintiff."   But this ground of the motion is met by the evidence referred to in connection with the third ground.

The fifth ground of the motion, and the last relied on, is this: "Because to entitle the plaintiff to recover, it must appear that the defendant had actual knowledge that the saw was liable to start by itself after being fully stopped; or circumstances must appear which would bring such knowledge to a careful and prudent man, and there is no evidence in the case tending to support either of these propositions."   But the evidence referred to in connection with the third ground of the motion is again applicable, and in consequence of that, the motion could not be sustained on the fifth ground.

The bill of exceptions and the defendant's brief refer to

testimony making against that herein pointed out, but such references do not affect the question. While the scintilla rule, if it ever obtained in this State, has long since been abandoned, still the question on a motion for a verdict against a party on whom the burden of proof rests is, does any evidence fairly and reasonably tend to sustain that party's claim, and if there is evidence fairly and reasonably having that tendency, it is immaterial to the motion that such evidence is contradicted. Contradictions and contradictory inferences are to be weighed by the jury. *Fraser* v. *Blanchard & Crowley*, 83 Vt. 136, 147, 73 Atl. 995, 75 Atl. 797; *Morris* v. *Trudo*, 83 Vt. 44, 74 Atl. 387, 25 L. R. A. (N. S.) 33; Wigmore Ev. §2494; *Commissioners &c* v. *Clark*, 94 U. S. 278, 284, 24 L. Ed. 59.

In the closing argument for the plaintiff counsel argued that there was negligence on the part of the defendant in not giving sufficient instructions as to the operation of this saw, the argument being based on the evidence as to the way the saw acted and the knowledge of the defendant in that regard. In charging the jury the court took the view that, while certain counts of the declaration alleged negligence in failure to instruct, there was no evidence tending to show that the injury was caused by want of instruction, and charged the jury that the plaintiff could not recover on that ground, and, referring to the argument of counsel in that behalf, told the jury not to consider that, that the only ground of negligence to be considered related to the sufficiency of the saw and its appurtenances.

But we think that the evidence disclosed a basis for the argument, and that the charge was more favorable to the excepting party than it was entitled to and so we do not consider the question of whether, had the argument not been warranted by the evidence, the charge of the court would have cured the erroneous claim based upon it.

*Judgment affirmed.*