PACIFIC LUMBER AGENCY *v.* NATIONAL AIRCRAFT MATERIALS CORPORATION.

Special Term at Rutland, November, 1935.

Present: POWERS, C. J., MOULTON, THOMPSON, and SHERBURNE, J., and BUTTLES, Supr. J.

Opinion filed January 7, 1936.

12

*William L. Scoville* and *George M. Goddard* for the plaintiff.

*Marvelle C. Webber* and *Christopher A. Webber* for the defendant.

MOULTON, J. The plaintiff seeks to recover the purchase price of two carloads of airplane spruce lumber, which it claims to be due from the defendant as the purchaser of the assets of the National Pulpwood Corporation, the consignee named in the bills of lading covering the shipments. Trial below was by jury. At the close of the plaintiff's case a verdict was directed for the defendant, and the plaintiff excepted.

The testimony of Perley R. Eaton and certain exhibits constitute all the evidence in the case. Eaton was the president and a large stockholder in the National Pulpwood Corporation, which owned a mill at East Dorset, Vermont. The two carloads of lumber were ordered from the plaintiff by Eaton on October 12, 1926, and December 9, 1926, respectively, with directions to send them to the Pulpwood Company at East Dorset, as consignee. Accordingly the plaintiff shipped the material, with the bills of lading made out to the Pulpwood Company as consignee, and invoiced the shipments to Eaton. The invoices stated in each instance that the merchandise was sold and charged to Eaton, and shipped to the Pulpwood Company, and, with regard to the shipment of December 9, the terms were cash less 2% "after sale to & unloading by my customer," (quoting in this respect the wording of the order.) The first shipment was ordered by telegraph; the second by a printed and typewritten order blank, bearing the heading "Perley R. Eaton, Wholesale Lumber Merchant * * * dealer in all kinds of Pacific Coast Lumber," and contained a request that it should be arranged that each connecting railroad should advise Eaton when the car passed their division points, "so I can be informed where car is all the time."

Eaton had a billing in transit privilege at East Dorset whereby he was enabled to re-sort the rough lumber at that point and forward it on the same bill of lading without extra charge, except the railroad company's charge for the stop over, and the shipments were billed to the Curtis Company in accordance therewith by the Pulpwood Company's mill superintendent. While the first carload was in transit Eaton sold it to the Curtis Airplane and Motor Company, and by virtue of his billing in transit privilege, it was sent on from East Dorset, without unloading, to the purchaser at Garden City, Long Island, and Eaton received the price agreed upon. The second carload was

14

disposed of, and the purchase price received, in the same manner except that Eaton obtained the Curtis Company as a customer before ordering it. Eaton gave the plaintiffs his personal notes for the lumber, but these notes appear to be unpaid. The Pulpwood Company was not in the business of manufacturing airplane parts, and had never done so, although the machinery at its mill in East Dorset could have been used for this purpose. On or about October 1, 1928, the National Aircraft Materials Corporation was organized, Eaton being its president and a large stockholder. On October 8, 1928, the Pulpwood Company deeded to the Aircraft Company its mill and equipment at East Dorset, the conveyance being executed by Eaton as agent of the grantor, under authorization of a vote of the stockholders of that corporation. By this transaction the Pulpwood Company did not divest itself of all of its assets, since it still owned a large amount of lumber at East Dorset, other lumber in Maine, New Hampshire and New Brunswick and machinery and mill equipment at Millerton, New Brunswick.

The plaintiff's position is that the evidence tended to show that Eaton in making the purchase of the lumber from the plaintiff, was acting in behalf of the Pulpwood Company, as his undisclosed principal, which ratified his act by receiving it; that the plaintiff transferred the title of the merchandise to that company which received the benefit of the contract and became the debtor, although after arrival at East Dorset it transferred title to Eaton, and that since the East Dorset mill and machinery of the Pulpwood Company were deeded to the Aircraft Company, the latter corporation assumed and became liable for the debts of its grantor by virtue of G. L. 4926 as amended by sec. 1, No. 125, Acts of 1919, then in force.

The defendant contends that the undisputed evidence shows that the purchases were made by Eaton personally, and not as agent; that the contract was his, and he received the benefit of it; that the Pulpwood Company had no title or interest in the lumber and never received it; and that, in any event, the statute above cited does not impose liability upon the Aircraft Company, since it only applies where the debtor corporation has transferred all of its assets and franchises to another company.

██ ██ In passing upon a motion for a directed verdict we must not only take the evidence in the most favorable light for the party against whom the motion is made but we must also give consideration to such inferences as might reasonably be drawn by the jury from the facts appearing in the evidence. *Picknell* v. *Bean*, 99 .Vt. 39, 41, 130 Atl. 578; *Partridge* v. *Cole*, 96 Vt. 281, 285, 119 Atl. 398, 32 A. L. R. 854. Where the evidence affords room for opposing inferences on the part of reasonable men, it is error to direct a verdict. *Anderson* v. *Dutton*, 100 Vt. 464, 468, 139 Atl. 210; *Comeau* v. *Manual and Sons Co.*, 84 Vt. 501, 509, 80 Atl. 51. ''It is a rule of general application that though the facts are undisputed, when fair minded and unprejudiced men may reasonably differ in the conclusion to be drawn therefrom the question is one of fact for the jury.'' *Spaulding* v. *Mut. Life Ins. Co.*, 94 Vt. 42, 57, 109 Atl. 22, 29. But where the evidence is so conclusive in character as to admit of no opposing inferences, the question is one of law and not of fact. *Crichton* v. *Barrows Coal Co.*, 100 Vt. 460, 463, 139 Atl. 252; *Spaulding* v. *Mut. Life Ins. Co., supra.*

██ ██ We may assume, although there is no direct evidence of the fact, that the bills of lading were delivered to the Pulpwood Company, and so, the bills being regarded in law as the symbols and representations of the cargoes (*Crampton* v. *McBain*, 71 Vt. 242, 245, 42 Atl. 611), the fact that this company was the consignee named therein was *prima facie* evidence that it had the title to the lumber. *Davis and Aubin* v. *Bradley and Co.*, 28 Vt. 118, 125, 65 A. D. 226; *Everett* v. *Coffin et al.*, 6 Wend. (N. Y.) 603, 606, 22 A. D. 551. It was the ''presumptive owner.'' *Ross* v. *Lumber Company*, 234 N. Y. 261, 137 N. E. 324, 24 A. L. R. 1160, 1162. But this ''presumption as to ownership * * * may be explained or rebutted by other evidence showing where the real ownership lies.'' The Carlos F. Roses, 177 U. S. 655, 665, 44 L. ed. 929, 933, 20 S. Ct. 803, 807. ''A bill of lading can always be explained by parol. It may be shown by parol to have been intended as evidence of an absolute sale, a trust, a mortgage, a pledge, a lien or a mere agency.'' *Bank of Rochester* v. *Jones*, 4 N. Y. (4 Comstock) 497, 55 A. D. 290, 292.

██ ██ The effect of the bills of lading as *prima facie* evidence of title was only to relieve the plaintiff, in its opening,

from doing more to establish the fact of ownership than to show the contents of the documents by admissible evidence. If nothing further appeared the proof upon this point would have been sufficient. But when evidence tending to show the contrary was introduced, the presumption became *functus officio,* so far as the burden of evidence was concerned, and the burden remained on the plaintiff to show the title as it claimed it to be. *Rutland Ry. Light and Power Co.* v. *Williams et al.,* 90 Vt. 276, 281, 98 Atl. 85; *Duprat* v. *Chesmore,* 94 Vt. 218, 226, 110 Atl. 305; *Lachance* v. *Myers,* 98 Vt. 498, 503, 129 Atl. 172; *Landry* v. *Hubert,* 101 Vt. 111, 113, 141 Atl. 593, 63 A. L. R. 396. Countervailing evidence was introduced here, and so the question is whether the statements in the bills of lading were so completely rebutted and explained that no issue as to the ownership of the lumber was left for the jury.

It is clear that the answer must be in the affirmative. The testimony of Eaton was uncontradicted. It shows that the purchase of the lumber was made by him personally; it was sold to him upon his personal credit; it was shipped in accordance with his instructions. While the invoices standing alone would furnish no proof of title (*Quigley* v. *Wiley,* 107 Vt. 253, 259, 179 Atl. 206), taken in connection with the other evidence they have corroborative force. Eaton received the benefit of the transactions; the Pulpwood Company had none of it. The reshipment to Garden City was done in pursuance of Eaton's billing in transit privilege, and presumably under his authority. Both carloads were sold by him before they reached East Dorset. The contract for the sale of one of them was made before it was ordered from the plaintiff. The evidence shows that at all times material Eaton was the owner or in control of the merchandise. It cannot reasonably be inferred that he was acting in behalf of the Pulpwood Company as his undisclosed principal, or that the Company obtained the title to the lumber and thereafter transferred it to him. There is nothing to show that the plaintiff intended to pass the title to the Pulpwood Company, or to do anything else than to ship the lumber which it had sold to Eaton as he directed. As between the plaintiff and Eaton, the parties to the sale, an actual delivery to the latter was not an essential to the passing of the title. *Griswold, Pearl & Co.* v. *Scott,* 66 Vt. 550, 555, 29 Atl. 1013. Counsel claimed

upon argument that at some unspecified time the plaintiff sent invoices to the Pulpwood Company, but the transcript affords not the slightest support for this contention.

 The plaintiff argues that the failure to produce the bills of lading covering the shipments to the Curtis Company raises an inference that no such documents existed. What happened at the trial was this: After demand for production counsel for defendant stated that search had been made but the bills could not be found. It was further stated that the railroad company had been requested to furnish duplicates and that these had been promised. Very shortly thereafter the plaintiff closed its case and the trial came to an end with nothing more said upon the subject by anyone. It is the general rule that when evidence peculiarly within the knowledge of a party is not forthcoming, an inference unfavorable to such party may be drawn from his failure to produce it. *In re McCabe's Will*, 73 Vt. 175, 176, 50 Atl. 804; *McKinstry* v. *Collins*, 74 Vt. 147, 161, 53 Atl. 438; *State* v. *Smith*, 71 Vt. 331, 332, 45 Atl. 219; *Anderson* v. *Dutton*, 100 Vt. 464, 467, 139 Atl. 210. But this rule does not apply where the evidence is equally available to both parties. *Anderson* v. *Dutton, supra. In re McCabe's Will, supra; State* v. *Fitzgerald*, 68 Vt. 125, 127, 34 Atl. 429. It cannot be said that this evidence was peculiarly within the knowledge or control of the defendant. It is true that it was admitted by its counsel that the bills had been in their possession, but we cannot impute bad faith because of the statement that they had been lost. The duplicates in the possession of the railroad company were equally available to the parties, and if any question were raised concerning their contents, or their existence, it was within the power of the plaintiff to obtain evidence upon the point. Indeed, it appears that, since the shipments from East Dorset to Garden City were in pursuance of Eaton's billing in transit privilege upon the original bills of lading, these bills would have been the ones to be produced. The existence of these bills was admitted by the plaintiff, because it based its claim in part upon the fact that the Pulpwood Company was the consignee named therein. Passing the question whether the defendant was given an adequate opportunity to produce the duplicates before the plaintiff rested its case, we

perceive no inference of the non-existence of the bills under the present circumstances.

■ Another claim is that the testimony of Eaton that he "Gave his notes in payment" is not sufficient to show that the plaintiff accepted them as such. This may be so, but it does not affect the result. The point is not whether the lumber was paid for by the notes, but whether the title to it was transferred to Eaton by the plaintiff.

In view of what we have said it is unnecessary to consider whether the provisions of G. L. 4926, as amended by sec. 1, No. 125, Acts of 1919, would otherwise apply to the situation. No error appears.

*Judgment affirmed.*