## Diamond National Corporation v. William Szerbik and Virginia Szerbik

[282 A.2d 806]

No. 23-71

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed October 5, 1971

*Charles Marro,* Rutland, and *Hanford G. Davis,* Brandon, for Plaintiff.

*Holden & King,* Bennington, for Defendants.

**Keyser, J.** This appeal presents the sole issue of whether the defendants, Mr. and Mrs. Szerbik, are personally liable to the plaintiff for materials furnished by the plaintiff to several job sites where Tri-State Equities, Inc., was doing work. Tri-

State Equities, Inc. (Tri-State), now financially defunct, was wholly owned by the defendants except for one qualifying share.

The plaintiff claims it sold and delivered the materials on the credit of the Szerbiks, at their instance and direction, and to no one else. The defendants, to the contrary, claim that the sales were made to Tri-State and that they have no personal liability. Tri-State was originally made a party defendant but before trial the plaintiff discontinued the action as to that defendant.

Trial was by court and resulted in a judgment for the plaintiff for the uncontested amount due for the materials. The issue before us is raised by defendants' exceptions to certain findings of the court as not being supported by the evidence, failure of the court to find as requested and by an exception to the judgment as not being based on the pleadings and findings.

Viewing the evidence in the light most favorable to the plaintiff, the prevailing party below, and excluding, as we must, the effect of modifying evidence, the factual situation appears as follows.

The defendants organized Tri-State around July 1967. They also wholly owned another company known as IVOW Corporation. These companies shared an office in Manchester, Vermont, and, together with the defendants, received mail from post office box No. 662. The defendants conducted operations as general construction contractors largely through these corporations and personally to some extent. The plaintiff operated a lumberyard in Rutland dealing in building supplies and materials.

The dealings between the plaintiff and defendants first began when the plaintiff furnished materials to the defendants for a laundry center in the Rutland Shopping Plaza in which the Szerbiks had a personal interest as owners.

The plaintiff's manager testified that the account for the purchase of materials was set up by personal contact with defendants Szerbiks at the plaintiff's plant in Rutland; that it was set up in their names and upon their credit; that all goods it delivered were under this account to their personal credit; and that plaintiff's dealings were entirely and exclusively with the Szerbiks. The plaintiff continued to extend

credit to the Szerbiks until sometime in 1968 when the account became delinquent.

All of the materials delivered to the job sites were invoiced to the defendants Szerbiks personally. Some of the materials delivered were receipted for by William Szerbik personally but for the most part were signed for by some employee on the site, and on a few deliveries no one was present to sign for them. A copy of each invoice was delivered with the goods, and another copy together with copies of other accumulated invoices were sent weekly to the Szerbiks by mail. The plaintiff also sent monthly statements of the account to the defendants. These invoices and statements were all mailed to the defendants at Box 662, Manchester, the address given to the plaintiff by the defendants when they opened their account. In addition to the invoices, each monthly statement was in the individual names of the defendants except the last two. In those two the name was shortened to "Wm Szerbik" because of a change to data process billings, but the supporting invoices were all in the joint names.

The defendants were fully aware of how the materials were being billed but never wrote plaintiff that it was incorrect. The plaintiff never had an account with Tri-State and Mr. Szerbik testified his corporation never made application for credit with the plaintiff. No suggestion was ever made by the defendants that plaintiff was billing the wrong party nor was this claim ever made by any personnel connected with Tri-state. No materials were ever refused or returned because they were billed to the defendants.

The defendants made payments on their account with the plaintiff by checks drawn by William Szerbik upon the account of Tri-State Equities, Inc., but there is nothing in the record which establishes a business relationship between the plaintiff and Tri-State.

After the account became delinquent, plaintiff's plant manager testified he called attention of the delinquency to the defendants and they promised to make payments on many occasions.

These facts are basically the findings of the court which establish the defendants' liability to the plaintiff. The critical findings are as follows:

"10. The parties dispute how the account was established, in particular in what name. The defendant William Szerbick (sic) testified that it was set up, in a manner he does not explain, for Tri-State Equities, Inc. The defendant Virginia Szerbick (sic), quite significantly, did not testify at all. Plaintiff's manager testified that it was set up by personal contact with the two defendants, at the company yard, that it was set up in their names and upon their credit, and that all goods delivered were under this account, to their personal credit. He even identified the somewhat unusual auto the defendants were driving at the time.

"11. All of the goods delivered were invoiced to the defendants Szerbick (sic) personally, a copy of the invoice being delivered with the goods and another forwarded weekly by mail. Each monthly statement was in their individual names, except the last two, in which the name was shortened to William alone because of a change to data process billing. The invoices accompanying these two statements were still in the names of the defendants individually.

"12. The weekly mailed invoices, the monthly statements, and credit slips were all mailed to the defendants individually at Box 662, Manchester, Vermont, the address given for that purpose by them. This appears to have been the box of Tri-State Equities, Inc., but they were all received by the defendants, who were fully aware how the materials were being billed.

"16. We are convinced from all the circumstances, and so find, that the account here in question was originally opened in the individual names of the defendants Szerbick, (sic) at their specific instance; that the credit afforded by the plaintiff was afforded to them; that all deliveries made and here involved were made upon their individual credit and with their full knowledge and consent. We are aided in this conclusion by the fact that Tri-State Equities was newly formed about the time this account was opened, that it was wholly owned by defendants, and that admittedly no credit application was made by them on its behalf."

The defendants cite "examples" of findings made by the court which they say are not supported by the evidence, namely, Findings No. 10 and Nos. 13–19.

A finding must stand if supported by any credible evidence, although there may be inconsistencies or even substantial evidence to the contrary. It is the trier of fact to whom is given the sole determination as to the weight of the evidence, the credibility of the witnesses and the persuasive effect of the testimony. All conflicts in the testimony must be resolved against the excepting party. *Anderson* v. *Knapp*, 126 Vt. 129, 134, 225 A.2d 72 (1966). The fact that the evidence is conflicting cannot avail the excepting party. *Barr's Estate* v. *Guay*, 127 Vt. 374, 379, 250 A.2d 512 (1969).

In Finding No. 10 the court stated, "The defendant William Szerbick (sic) testified that it (the account) was set up, in a manner he does not explain, for Tri-State Equities, Inc." The defendants point to the testimony of Mr. Szerbik that he set up an account with the plaintiff on behalf of Tri-State and that he and his wife never had a personal account with the plaintiff. The evidence of the plaintiff, however, was diametrically opposed to this testimony of the defendant. As a consequence it was for the court to determine what the facts were and the finding was proper under this conflicting evidence.

The court found by Finding No. 13 that "The first materials delivered were to a laundromat project in Rutland in which the defendants admittedly had a personal interest, as owners." The defendants claim this was not a relevant matter since they had paid for the materials. The finding is properly based on the plaintiff's evidence and is relevant to the issue presented. It shows what occurred when the account was commenced and relates to the circumstances existing at the inception of the dealings between the parties. In the first instance, credit was extended to Mr. and Mrs. Szerbik, and, so far as the plaintiff was concerned, there is evidence which supports the fact that this business relationship continued without change.

The defendants' argument as to Finding No. 14 is that the goods delivered to job sites and signed for by William Szerbik but mostly "by some employee on the site" leaves the

implication that such employees were Szerbiks whereas the evidence is that they were employed by Tri-State. Whether or not the claimed implication exists, it does not appear from the record that the court made any use of such an implication in deciding the case. Moreover, there is no evidence that the plaintiff had any knowledge or intention that it was delivering materials to anybody other than the defendants by whom credit had been established.

The court stated in Finding No. 15 that the defendants made no written efforts to get the name of the account changed. The defendants assert that there is absolutely no evidence that the Szerbiks had personal correspondence with the plaintiff. However, Mr. Szerbik testified he did "on occasion" write to the plaintiff about other matters (than the account) but never asked to have the billing corrected. He instructed Mr. Slavin, an employee of Tri-State, to question the billing practice of the plaintiff in regard to this billing. Nevertheless, the defendants paid the invoices and statements in their name without taking any affirmative action themselves with the plaintiff. This would indicate the correctness and validity of the standing of the account. See *Pacific Lumber Agency* v. *National Aircraft Materials Corp.*, 108 Vt. 10, 16, 182 A. 192 (1936), to the effect that the invoices, taken in connection with all of the other evidence in the case, establish that the defendants were the purchasers of the building materials and acquired title to them. And as the buyers of the goods they are liable for the purchase price.

It does not appear in the record that the plaintiff's plant manager who extended the credit to the Szerbiks to begin with would have done so to the corporation even if it had applied for it. The record does not show that Tri-State had a contract with the plaintiff to supply it with materials. The defendants appear to be trying to raise this conclusion by inference but the evidence does not support it. To avoid liability the burden was on the defendants to establish this fact. After the account became delinquent plaintiff's credit manager wrote the defendants on October 2, 1968, and October 24, 1968, demanding payment of the account. Plaintiff's Exhibits 11 and 12. In response to the October 2nd letter, the plaintiff received a payment of $1000, but there was no response to the

October 24th letter. Although these letters were addressed to the defendants personally, they did not refute the account or make any protest that it was not their personal liability. The evidence fails to show any concentrated effort by the defendants to have credit extended to Tri-State by the plaintiff and the account placed in the corporation name, and the defendants thus relieved from it.

The defendants next argue that parts of Finding No. 16 are unsupported by the evidence. However, from our search of the record we are satisfied that the finding is amply supported by credible evidence and by the other subordinate findings.

By Finding No. 17 the court stated that while certain matters were true, they were immaterial to the case. These matters related to payments being made by checks of Tri-State. The court said it regarded this as having no legal materiality, especially since no evidence was introduced as to the financial relationships between the defendants and that corporation. Also, the court found that the use of the business post office box at the instance of the defendants and the business telephone were purely incidental. The defendants argue that the judgment for the plaintiff cannot be substantiated on the basis of the facts in this finding. Standing alone, without more, we would agree with the defendants, but this is not the situation. Furthermore, aside from any conclusions of law, the facts stated in this finding are supported by the evidence.

The defendants argue that Finding No. 18 contains conclusions of law. Their objection is to the statement of the court that the defendants have attempted to shift the responsibility for their indebtedness to an insolvent corporation. Whether or not it is a conclusion of law, it is immaterial to the ultimate determination of the issue for resolution by the court and is not a necessary ingredient in support of the judgment.

Finding No. 19 is that the defendants Szerbiks are liable to the plaintiff in the stipulated amount. The defendants claim the record does not support this ultimate finding. Where a conclusion of law is stated no error can be predicated upon it if the conclusion is sustained by the facts previously found. *Thompson* v. *Smith,* 119 Vt. 488, 496, 129 A.2d 638 (1956).

Error is claimed by the defendants for the failure of the court to make eleven of their requested findings of fact. A review of these requests show that they were substantially complied with by the court. One exception is the request that deliveries of goods were to job sites of projects being built by Tri-State. On the evidence in the case this request was properly denied.

Finally, the defendants claim that the judgment is not based on the pleadings and findings.

This exception raises only the question of whether the judgment order is supported by the facts found. *Miller* v. *Miller,* 124 Vt. 76, 78, 197 A.2d 488 (1963). And this Court must construe findings so as to support the judgment if possible. *E. Mont. Dev. Corp.* v. *Barre Trust,* 127 Vt. 491, 498, 253 A.2d 131 (1969).

Defendants argue that there is no showing of a sale and delivery of the goods to the defendants. There is a conflict in the evidence as to this. So far as the plaintiff was concerned it did its business dealings with the defendants on their credit, and who ordered the goods or where and to whom they were delivered did not alter the agreement between these parties. Proof according to the pleadings was established by the evidence.

A careful research of the evidence satisfies us that the findings of fact are fairly and reasonably supported by credible evidence and must stand. 12 V.S.A. § 2385; *Crawford* v. *Lumbermen's Mutual Casualty Co.,* 126 Vt. 12, 16, 220 A.2d 480 (1966). The facts found support the judgment and it will be affirmed.

*Judgment affirmed.*